I.G. SIMPSON, Appellant,

v.

CITY OF MUSKOGEE, a municipal corporation, and Muskogee Knothole Association, Appellees.

No. 82944.

Court of Appeals of Oklahoma, Division No. 1.

June 28, 1994.

Ordered Published July 12, 1994.

Greg Haubrich, Lynn B. Mares, Oklahoma City, for appellant.

C. Bart Fite, Muskogee, for appellee, City of Muskogee.

Roger Hilfiger, Muskogee, for appellee, Knothole Ass'n.

*MEMORANDUM OPINION*

HANSEN, Judge:

In this action for personal injury, Appellant I.G. Simpson (Simpson) seeks review of

the trial court's order granting summary judgment in favor of Appellees City of Muskogee (City) and Muskogee Knothole Association (Association).

Simpson was injured when struck in the eye by a baseball while attending a baseball game in which his grandson was playing. City owns the ballpark where the game was being played, and Association leases and operates the park. In his Petition initiating this action, Simpson alleged his injuries were caused by the negligence of City and Association because they failed to properly fence the spectator seating area, and further failed to warn Simpson of a "hidden hazard, snare or trap" of which they had notice.

The trial court granted motions for summary judgment filed separately by City and Association. The trial court specifically found Simpson assumed the risk of being hit by a baseball while he was a spectator at the baseball game and that assumption of the risk is a complete defense to the action. Simpson appeals from the trial court order granting judgment to City and Association.

Simpson contends on appeal that the trial court erred in granting summary judgment because there are substantial questions of material fact in controversy concerning whether City and Association provided a reasonably safe area for spectators. Simpson also argued certain exemptions in the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq., which were asserted by City in its motion for summary judgment, do not apply. We need not reach the latter argument because we find the trial court was correct in granting summary judgment on other grounds.

■ The defense of assumption of risk is a question of fact and normally is a matter for the jury. See, *Okla. Const.*, Art. XXIII, § 6. The Supreme Court has, however, found there are two exceptions to that general rule:

First, assumption of the risk ... need not be submitted to a jury in cases where the plaintiff fails to present evidence tending to show primary negligence on the part of the defendant, and second, ... where, upon undisputed facts, reasonable people exercising fair and impartial judgment could not reasonably reach differing conclusions concerning them.

*Flanders v. Crane Co.*, 693 P.2d 602, 606 (Okla.1984).

■ The parties agree Simpson was an invitee at the ballpark when he was injured. It is a well established rule in this jurisdiction that:

The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to reconstruct or to alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from danger which was obvious or should have been observed in the exercise of ordinary care.

*Hull v. Oklahoma City Baseball Co.*, 196 Okla. 40, 163 P.2d 982 (1945).

■ It is similarly well accepted that "[t]he risk of being struck by a batted or thrown ball is one of the natural risks assumed by spectators attending a ball game". *Lang v. Amateur Softball Association of America*, 520 P.2d 659 (Okla.1974). We are unpersuaded by Simpson's argument that the facts here distinguish this matter from other cases. That the ball which injured him did not come from the field of play, but from an adjacent area, makes no material difference under the evidence before us.

Who or what propelled the ball is apparently not known to Simpson or any other witness. Simpson stated in his deposition that the ball came from an area between two playing fields "where kids are warming up, and spectators are mingling around and talking to one another about the game". He admitted in his deposition that "[t]here was always some team going in there and warming up" and that "there wasn't any screening in between that area and where [he was] sitting".

Simpson acknowledged no one had directed him where to sit, and that at the time he

was hit, he had gotten out of his chair and was walking to the dugout to give the players some gum. He also acknowledged he had attended games at the ballpark for some five years, that he usually sat in the same area and that foul balls came into the area where he sat "all the time" when they had games going at the four fields in the park. The fields are arranged facing outward from a central concession stand.

■ Under these facts, even in the light most favorable to Simpson, we find he undertook what the Supreme Court has described as *implied primary assumption of risk.* *Thomas v. Holliday by and through Holliday,* 764 P.2d 165 (Okla.1988) (footnote 8). In this type of case, the plaintiff makes no express agreement to release the defendant from liability, but is presumed to have consented to such release because he voluntarily took part in a situation which involves inherent and well known risks. *Thomas,* at 168.

In *Thomas,* beginning at 168, the Supreme Court noted a defendant owed no duty of care to a plaintiff where there is such assumption of the risk, and that:

> A classic example of this type of risk assumption is afforded by a fan injured while attending a sports event. The fan is deemed to have consented that the game may be played without taking any precautions to protect him from stray balls, and the law takes notice of the existence of a special "relational" duty between the fan and the owner. (emphasis in original).

The fact that the ball in controversy may have come from an area used routinely for "warming up", and not from the field of play, does not operate to distinguish this case from the rules set forth above. In *Lang v. Amateur Softball Association of America,* 520 P.2d at 661, the Supreme Court considered a similar injury claim where a pitcher warming up in a "bull pen" area threw a wild pitch over a fence and struck the plaintiff. There the Court expressed its view that:

> Persons familiar with the game of softball or baseball, both as spectators at ball parks and as viewers on television are well aware that a "bull pen" or warm-up area is as integral a part of the game as the players who are performing on the field.... It should also be readily obvious to any person who is familiar with the game that such warm-up areas or bullpens are quite often not screened in any manner from patrons sitting in certain areas of the ball park and it should also be apparent to persons familiar with the game that on occasions a pitcher will lose control and throw a "wild pitch" from the warm-up or the person to whom he is throwing will miss the ball and the same may go in any direction either onto the playing field or into the stands occupied by the paying customers.

While the ball which injured Simpson appears to have not come from the field, or a regular "bull-pen" area, by his own admission, the area from which Simpson states the ball came is regularly used by the teams for warming up. Simpson was also aware foul balls from other fields were routinely hit into the area where he had placed himself and was injured.

The risk of being hit by a baseball from virtually any direction was thus open and apparent. Contrary to Simpson's assertions, City and Association had no legal duty to alter the ball park to protect him from such risk. *Hull v. Oklahoma City Baseball Co.,* 163 P.2d at 984. Simpson assumed "all normal or ordinary risks attendant upon the use of the premises". *Hull,* at 984.

■ That City may have seen fit to alter the premises after Simpson's injury is not material to the question of liability at the time of injury. There is no evidence City or Association was aware of any *hidden* hazards before the injury.

The trial court's order granting summary judgment in favor of City and Association is AFFIRMED.

JONES, P.J., and ADAMS, J., concur.