2004 OK 71

R. Keith TUCKER and Pam Tucker,
Individually and as husband and
wife, Plaintiffs/Appellants,

v.

ADG, INC., a/k/a Architectural Design
Group, Inc., Defendant,

OKC Athletic Club, Limited Partnership
otherwise known as Oklahoma City Ath-
letic Club a/k/a or d/b/a Oklahoma Re-
dhawks, T.S.M.G. a/k/a The Sports Man-
agement Group, Defendants/Appellees.

No. 98,895.

Supreme Court of Oklahoma.

Sept. 21, 2004.

Rehearing Denied Dec. 14, 2004.

Rex K. Travis of Oklahoma City, OK, for Plaintiffs/Appellants.

Robert D. Looney, Jr. of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, for Defendant/Appellee OKC Athletic Club, Limited Partnership, otherwise known as Oklahoma City Athletic Club a/k/a or d/b/a Oklahoma Redhawks. T.S.M.G. a/k/a The Sports Management Group.

Natalie K. Ramsey and Bradley K. Donnell of McAfee & Taft, P.C., Oklahoma City, OK, for Defendant/Appellee.

1. The record reflects this case was originally filed on April 13, 2000 with Plaintiff subsequently filing a notice of voluntary Dismissal Without

LAVENDER, J.

¶1 The issue in the present cause is whether the trial court erred in entering judgment as a matter of law in favor of Defendants/Appellees in accordance with *Hull v. Oklahoma City Baseball Co.*, 1945 OK 194, 163 P.2d 982, which held a spectator seated in an unscreened portion of a grandstand at a baseball game assumes all normal or ordinary risks attendant upon the use of the premises. Plaintiffs/Appellants seek the overruling of *Hull* in the instant appeal. We hold that the trial court correctly entered judgment as a matter of law in favor of Defendants in this case and we further hold that *Hull* remains the rule of law in Oklahoma.

I

## FACTS AND PROCEDURAL HISTORY

¶2 Plaintiffs, R. Keith Tucker and Pam Tucker filed the instant action on August 8, 2002 [1], seeking compensatory and punitive damages for injuries allegedly caused by the wanton, reckless and gross negligence of the Defendants (Redhawks, lessee and operator of the ball park/stadium, ADG, Inc., a/k/a Architectural Design Group, Inc., the architectural firm/designer of the stadium, and S.M.G., the stadium consultant, respectively). Plaintiffs' Petition alleged that on April 17, 1998, while Plaintiffs attended a Redhawks baseball game at the Redhawks stadium in Oklahoma City, Oklahoma, Plaintiff, R. Keith Tucker was injured when a foul ball struck his left facial and eye area. Plaintiffs specifically alleged they were "on Defendant's premises as a business invitee in the luxury suite seating area."

¶3 Plaintiffs alleged Defendants "negligently fail[ed] to provide a reasonably safe facility and premises, which complied with architectural design standards and baseball stadium and seating standards, as well as use of protective devices, nets, and other available safeguards available on the market."

Prejudice on August 9, 2001. Plaintiff re-filed the action within one year pursuant to 12 O.S. 2001 § 100.

Plaintiffs further alleged Defendant Redhawks failed to warn Plaintiff "of known dangers on Defendant's premises, which Defendants created" and the "[t]he protective net behind home plate was dangerous in design and wasn't large enough and was too low to protect the Plaintiff from injury."[2]

¶4 In addition to their negligence claims, Plaintiffs seek punitive damages for the alleged wanton, reckless and gross negligence of Defendants. Specifically, Plaintiffs allege Defendants "knew of the statistics of injury resulting form [sic] failure to properly safeguard the baseball patrons under similar circumstances and willfully and recklessly failed to warn the patron or to take any reasonable safeguards to compensate for the dangerous design of the premises by proper netting and other measures available in the industry." Finally, Plaintiffs' Petition included allegations of breach of contract and express and implied warranties.[3]

¶5 On the same date of filing of its Answer,[4] S.M.G. filed its Motion to Dismiss and Brief in Support, seeking dismissal of Plaintiffs' breach of contract and breach of express and implied warranty claims for failure to state a claim upon which relief can be granted on the basis that there was no contract or warranty, express or implied between Plaintiffs and S.M.G.

¶6 Defendants ADG, Inc. and Redhawks[5] likewise filed respective Motions to Dismiss and Briefs in Support pursuant to 12 O.S. § 2012(B) (Supp.2003) on the basis of statute of limitations. In the alternative, ADG, Inc. sought dismissal of Plaintiffs' breach of contract, warranty and negligence claims for failure to state a claim upon which relief can be granted. Regarding the negligence claims, ADG, Inc. argued Plaintiff voluntarily assumed the risk of injury while attending a baseball game, citing *Hull v. Oklahoma City Baseball Co.*, 1945 OK 194, 163 P.2d 982.

¶7 Plaintiffs' October 15, 2002 Response to Defendants' Motions to Dismiss included an express acknowledgment in paragraph one as follows:

[t]his is an unusual case in that ultimately, all the Defendants will be entitled to have either Motions to Dismiss or, more probably, Motions for Summary Judgment, sustained. This is so because this case seeks to raise the issue whether the Oklahoma Supreme Court will change the old rule of *Hull v. Oklahoma City Baseball Co.*, that a fan who sits in the unscreened portion of the bleachers at a baseball game cannot recover if hit by a ball.

Plaintiffs' Response further included Plaintiffs' dismissal "in its entirety Plaintiff's

2. Plaintiff Pam Tucker, as the wife of Plaintiff, R. Keith Tucker, also sought compensatory damages for loss of consortium, companionship and services in this case. Plaintiffs' Petition also included additional negligence claims as follows: Plaintiffs' claim against Defendant ADG, Inc. alleged the architectural firm's failure to design a safe area where the Plaintiffs could be located and Plaintiffs finally generally allege that the Redhawks as operator of the ball park "breached the duty to create and maintain a safe luxury suite setting [sic] area where Plaintiffs were seated."

3. These claims were based upon Plaintiffs' assertion that Defendants "fail[ed] to furnish a safe place to sit during the game, as the seats and the area where Plaintiff contracted to sit was reserved and designated as a more expensive area in the luxury suite seating area. The Plaintiff was thus required to sit in a specific seat for which was paid an additional price separate from the reserved seating. This along with the purchase of the ticket created an express or implied warranty."

4. In its Answer, Defendant S.M.G. raised numerous affirmative defenses including but not limited to failure to state a cause of action against Defendant upon which relief can be granted, Plaintiffs' action was barred by the applicable statute of limitations, comparative and contributory negligence of Plaintiff, R. Keith Tucker barred Plaintiffs' recovery, all conditions complained of by Plaintiffs were open and obvious and readily observable and barred recovery, and Plaintiffs voluntarily assumed the risk of all conditions existing at the ballpark on or about April 17, 1998 and voluntarily assumed the risk of a known danger by attending a baseball game at the ballpark on that date.

5. Redhawks' Motion to Dismiss additionally argued Plaintiffs' cause of action for breach of express and implied warranty fails to state a cause of action because Plaintiff was not a third party beneficiary to whom such warranties would extend under Oklahoma law under 12A O.S.2001 § 2–318.

claims against [Defendant ADG, Inc.]." [6] Additionally, Plaintiffs announced their dismissal of the breach of contract and breach of express or implied warranty claims against the remaining Defendants S.M.G. and Redhawks.

¶ 8 Redhawks filed their Amended Motion to Dismiss and Brief in Support, in which Redhawks expressly withdrew their Motion to Dismiss on the basis of statute of limitations. Redhawks argued the remaining negligence claims should be dismissed upon the basis that the Redhawks had no legal duty to warn Plaintiff, a spectator at a baseball game, of the obvious, well-known and natural risk of being struck by a baseball, nor do they have a legal duty to protect Plaintiff from such a risk. Additionally, Redhawks argued Plaintiffs' claims were barred by the doctrine of implied primary assumption of the risk. S.M.G. later filed a Motion for Summary Judgment and Brief in Support essentially raising the same legal arguments.[7]

¶ 9 Plaintiffs' Response to Redhawks' Amended Motion to Dismiss reiterates their concession that pursuant to existing Oklahoma law as enunciated in the *Hull* case, "[t]he trial court should sustain the pending Motion to Dismiss so as to present that issue to the Supreme Court." Plaintiffs argue *Hull* should be overruled on the basis that the OKLA. CONST. art. 23, § 6 is absolute on its face that the defense of contributory negligence or assumption of risk shall go to the jury rather than be decided as a question of law by the court. Additionally, Plaintiffs urge the overruling of *Hull* on the basis that the rule in *Hull* runs afoul of the Good Samaritan Act, 76 O.S.2001 § 5, and further argue that *Hull* is inconsistent with other Oklahoma Supreme Court case law concerning open and obvious defects. Plaintiffs' Response to S.M.G.'s Motion for Summary Judgment concedes the material facts are uncontroverted and reiterates that "[t]he trial court should sustain the pending Motion for Summary Judgment so as to present that issue to the Supreme Court. The Supreme Court should then reverse *Hull.*"

¶ 10 Subsequent to hearing, the trial court entered a Journal Entry of Judgment on January 30, 2003 sustaining Defendants' motions in their entirety and entered judgment for Defendants The Sports Management Group and OKC Athletic Club, Limited Partnership, a/k/a Oklahoma City Athletic Club, a/k/a or d/b/a Oklahoma Redhawks against Plaintiffs R. Keith Tucker and Pam Tucker. Plaintiffs filed their Petition in Error with this Court on February 21, 2003 and a Motion to Retain on the same date. Defendants/Appellees thereafter filed re-

---

**6.** Plaintiffs filed a formal notice of Dismissal of Defendant, ADG, Inc., a/k/a Architectural Design Group, Inc. on November 15, 2002.

**7.** In support of its summary judgment motion, S.M.G. additionally argued Plaintiffs' prior admissions concerning assumption of the risk in the originally filed action should be deemed admitted in the instant action. Plaintiffs' failure to timely respond to S.M.G.'s First Request for Admissions in the originally filed action had resulted in an Order entered against Plaintiffs in that case deeming the request for admissions admitted pursuant to 12 O.S.2001 § 3236(A). Plaintiffs subsequently filed their Notice of Voluntary Dismissal in that case and re-filed the instant action 364 days later. We note the admissions in the first action each were directed at Mr. Tucker's subjective awareness and/or observations of the dangers associated with attending a baseball game and subjective awareness of warnings provided to spectators at the ballpark. Whether or not these admissions are deemed admitted in this case, the extent of Plaintiff's *subjective* awareness of the risks, dangers and warnings is not deter-

minative of assumption of risk as a matter of law in this case. Furthermore, Plaintiffs concede in their Response to S.M.G.'s Motion for Summary Judgment that the facts contained in the admissions are not material or necessary to a decision in this case. We therefore refrain from ruling on the admissibility of the admissions from the originally filed action in the instant case. One who voluntarily participates in a particular activity or situation "involving inherent and well-known risks" is presumed to have consented to release the defendant from future liability for injuries caused by such risks. *Thomas v. Holliday*, 1988 OK 116, 764 P.2d 165, 169. Specifically, an owner or occupant of a baseball park is not "liable for an injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care," *Hull v. Oklahoma City Baseball Co.*, 1945 OK 194, 163 P.2d 982, 982 and "[t]he risk of [a spectator attending a baseball game] being hit by a baseball from virtually any direction [is] open and apparent" as a matter of law. *Simpson v. City of Muskogee*, 1994 OK CIV APP 103, 879 P.2d 1269, 1271.

sponses indicating consent to Plaintiffs' Motion to Retain. We previously granted Plaintiffs' Motion to Retain this appeal.

## II

## THE TRIAL COURT CORRECTLY DETERMINED DEFENDANTS WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW PURSUANT TO *HULL V. OKLAHOMA CITY BASEBALL CO.*, 1945 OK 194, 163 P.2d 982 AND ITS PROGENY.

¶ 11 As a starting point, we note that "summary judgment is appropriate only when it appears [from the pleadings, affidavits, depositions, admissions or other evidentiary materials] there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law." *Flanders v. Crane Co.*, 1984 OK 88, 693 P.2d 602, 605; *Carris v. John R. Thomas & Assoc.*, 1995 OK 33, 896 P.2d 522, 530; 12 O.S. Ch.2 App., Dist. Ct.R. 13(d). An order granting summary relief disposes solely of law questions and is reviewable by a *de novo* standard. *Copeland v. Lodge Enterprises, Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699; *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. Additionally, our review of a trial court's dismissal for failure to state a claim upon which relief can be granted likewise involves a *de novo* consideration as to whether the petition is legally sufficient. *Indiana Nat'l Bank v. State Dep't of Human Services*, 1994 OK 98, 880 P.2d 371, 375. "Generally, a petition may be dismissed as a matter of law for two reasons (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Id.*

¶ 12 This case is unique in that Plaintiffs repeatedly have conceded in their Response briefs submitted below that the trial court should grant Defendants' respective motions and enter judgment in Defendants' favor as a matter of law pursuant to the rule in *Hull*, thereupon Plaintiffs would pursue the overruling of *Hull* on appeal to this Court. We note that despite Plaintiffs' repeated concessions of the propriety of granting Defendants' motions (and acknowledgment that the material facts of this case are uncontroverted), Plaintiffs, nevertheless, in their Response to Redhawks' Amended Motion to Dismiss as well as the Petition in Error, attempt to raise factual skirmishes concerning whether Plaintiff was seated in an unscreened or screened portion of the stadium [8] and/or assert that this case is distinguishable from the facts in *Hull* such that Redhawks' Motion to Dismiss should be denied. We reject Plaintiffs' later-raised factual contentions to the extent we find they are immaterial to the determination at issue in this case and to the extent that they are inconsistent with Plaintiffs' earlier concessions in their earlier filed Response Briefs. "Oklahoma case law has long allowed admissions in the brief to be regarded as a supplement to the appellate record." *Brennen v. Aston*, 2003 OK 91, ¶ 4, 84 P.3d 99, 100 n. 3; *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84, 86, n. 3 (citation omitted). In accordance with Plaintiffs' admissions and the uncontroverted material facts of this case, the trial court properly granted Defendants' respective Motions and entered judgment in Defendants' favor as a matter of law pursuant to the rule in *Hull*.

¶ 13 In *Hull v. Oklahoma City Baseball Co.*, 1945 OK 194, 163 P.2d 982, this Court set forth the rule applicable in personal injury actions filed by spectators who, while seated in an unscreened portion of a baseball stadium, are struck and injured by a baseball during a baseball game.[9] The *Hull* Court's Syllabus provides in pertinent part as follows:

---

8. Plaintiffs' Response to Redhawks' Amended Motion to Dismiss argued "Tucker's Petition does not allege that he chose to sit in an unscreened part of the ballpark, as in *Hull*. Rather, it alleges that he sat behind a screen but that the screen was inadequate." Plaintiffs' position as stated in this particular response brief that this case is factually distinguishable from *Hull* is inconsistent with Plaintiffs' previous acknowledgment of the application of the rule in *Hull* on the facts of this case and their present quest for the overruling of *Hull*.

9. For a historical perspective on the law and baseball spectator injuries, see Roger I. Abrams, *Two Sports Torts: The Historical Development of the Legal Rights of Baseball Spectators*, 38 TULSA L. REV. 433 (2003).

The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care.

*Id.* at 982. With respect to defendants' alleged duty to warn, *Hull* set forth the general rule as follows:

Generally speaking, the possessor of land is liable to a visitor only if he knows of or should have known of a dangerous condition and realizes that it involves unreasonable risk and has no reason to believe that the plaintiff will discover the condition and fails to warn the visitor so that the latter may avoid the harm.

*Id.* at 984. (citation omitted).

¶ 14 The baseball stadium at issue in *Hull* included areas of spectator seating which were protected by a protective screen and areas of unscreened spectator seating. The plaintiff in *Hull* was injured upon being struck by a foul ball while seated in an unscreened portion of a grandstand. Defendants there had "screened several box seats, some of which were in front of the part of the grandstand occupied by plaintiff.[10] However, the screens protecting the box seats did not extend high enough and were not intended to protect occupants of such seats used by plaintiff." *Id.* at 983. The issue in *Hull* was whether it was negligent for defendants to fail to screen that portion of the grandstand where plaintiff was seated. The plaintiff in *Hull* argued that "reasonable men may differ as to whether the facts constitute negligence, [and therefore,] the question is one for the jury to decide." *Id.* (citation omitted). Defendants in *Hull,*

distinguishing cases of injury resulting from defective conditions of grandstand structures or protective screens, contend that the only duty that devolved upon defendants was to afford protected seats to those of the patrons who desired them and that defendants performed this duty by screening a reasonable number of seats.

*Id.* The trial court in *Hull* sustained the defendants' theory, the cause was dismissed and ultimately, this Court affirmed.

 ¶ 15 While the rule in *Hull* has been summarily labeled "assumption of the risk," [11] the *Hull* Court's ruling actually encompasses several additional key determinations as a matter of law: the absence of a duty on the part of the owner or occupant of the premises to reconstruct or alter the premises so as to obviate known and obvious dangers, and the absence of defendants' liability for a spectator's injury resulting from an obvious danger or one that should have been observed in the spectator's exercise of ordinary care. *Hull,* 163 P.2d at 982. Further, *Hull's* conclusion that "there was no unreasonable risk not appreciated by the plaintiff as a spectator of the baseball game," amounts to a determination that the risk of injury by a foul ball is a normal or ordinary risk, which is open and obvious to a spectator at a baseball game as a matter of law, for which defendants have no duty to warn. *Id.* at 984.

¶ 16 In this case, the facts and allegations closely mirror those of the *Hull* case. Plaintiff here alleged he was seated "in the luxury suite seating area" while observing the baseball game at the time he was struck and injured by a foul ball. Plaintiff in this case similarly alleged the protective net behind home plate "wasn't large enough and was too low to protect the Plaintiff from injury." Plaintiffs here further argued in their Response to Defendant Redhawks' Amended Motion to Dismiss that their Petition "alleges [Plaintiff] sat behind a screen but that the screen was inadequate." Notably absent from both *Hull* and this case are any allegations of defective conditions of either grandstand structures or protective screens. Likewise, in neither case do the plaintiffs

---

**10.** The protective screen in *Hull* "extended from behind home plate to 135 feet on each side thereof and within a distance of 35 feet of where plaintiff sat." *Hull,* 1945 OK 194, 163 P.2d at 983.

**11.** *See Lang v. Amateur Softball Ass'n of America,* 1974 OK 32, 520 P.2d 659; *Simpson v. City of Muskogee,* 1994 OK CIV APP 103, 879 P.2d 1269.

allege defendants failed to screen a reasonable number of seats. Rather, in both *Hull* and here, plaintiff alleged the protective screen behind home plate was too low to protect the area in which plaintiff was seated. The facts in this case are analogous to the facts in *Hull,* and as such, the case is subject to dismissal pursuant thereto.

## III

### PLAINTIFFS' CHALLENGES TO THE VIABILITY OF THE *HULL* CASE.

### A. Plaintiffs' constitutional challenge.

▮▮▮▮▮ ¶ 17 Plaintiffs attack the *Hull* case and its progeny on the basis that the Oklahoma Constitution is absolute on its face that the defense of contributory negligence or of assumption of risk shall be decided by the jury pursuant to OKLA. CONST. art. 23, § 6.[12] While this constitutional mandate has been strictly followed in many cases, Plaintiffs' argument ignores the fact that Oklahoma jurisprudence has two[13] longstanding recognized exceptions to the rule that the defenses of assumption of the risk and contributory negligence must be submitted to a jury. *See Flanders v. Crane Co.,* 1984 OK 88, 693 P.2d 602, 606. (footnote omitted) (citations omitted).

First, assumption of the risk and contributory negligence need not be submitted to a jury in cases where the plaintiff fails to present evidence tending to show primary negligence on the part of the defendant.... In the first instance, there is no need for any defense at all because where

there is no duty or negligence there can be no liability.

*Id.* In other words, pursuant to this recognized exception, if there is no duty or negligence on the part of the defendant, there is no need for submission of the defenses of assumption of risk and contributory negligence to a jury and the determination may be made by the court as a matter of law. We have described a case such as this one—"a fan injured while attending a sports event"— as "a classic example" of implied primary assumption of the risk, "where the defendant does not owe a duty of care to the plaintiff [and therefore, would not be negligent]." *Thomas v. Holliday,* 1988 OK 116, 764 P.2d 165, 169. The *Thomas* case further explains *"[i]mplied primary assumption of risk is, arguably, not a true negligence defense since no duty is ever owed the plaintiff and no cause of action for negligence is ever alleged." Id.* at 169, n. 8 (citations omitted). Clearly, under the facts of this case, which amount to a classic example of implied primary assumption of the risk such that no duty is ever owed to the Plaintiff in the first instance, the case falls squarely within the first well-recognized exception to the constitutional mandate requiring submission of the defenses of assumption of the risk and contributory negligence to a jury for determination.[14]

### B. Plaintiffs' statutory challenge.

▮▮▮ ¶ 18 Plaintiffs also challenge *Hull* and the cases following *Hull* on the basis that *Hull* conflicts with the "Good Samaritan Act," 76 O.S.2001 § 5,[15] arguing that this

---

12. "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." OKLA. CONST., art. 23, § 6.

13. Since we find this case falls within the first exception to the rule requiring submission of the assumption of risk and contributory negligence defenses to a jury, we need not determine whether this case likewise falls within the second exception to the rule, which provides that these defenses "need not be submitted to a jury, where, upon undisputed facts, reasonable people exercising fair and impartial judgment could not reasonably reach differing conclusions concerning them." *Flanders v. Crane Co.,* 1984 OK 88, 693 P.2d 602, 606.

14. *See also Simpson v. City of Muskogee,* 1994 OK CIV APP 103, 879 P.2d 1269, 1270 (labeling a spectator's assumption of the risk at a baseball game as implied primary assumption of risk, finding defendants had no legal duty to protect the spectator from such open and apparent risks and thus, determining in this case that the defense of primary assumption of risk may be determined as a matter of law by the court).

15. "(a) Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself, and except as hereinafter provided." 76 O.S.2001 § 5(a).

statute "provides the duty, which *Hull* found lacking." Plaintiffs argue that part (a) of this statute imposes legal responsibility "upon everyone" for injury occasioned by negligence, the statute "has been on the books in Oklahoma since before statehood" and notes that the statute does not expressly exclude cases involving a fan injured at a ball park.

¶ 19 While we acknowledge that the statutory language contained in part (a) of this particular statutory provision has been the law for many years prior to the *Hull* case,[16] we note the absence of any expression of legislative intent to abrogate the common-law duty of care applicable on the facts of this case.[17] Generally, abrogation of the common law "must be clearly and plainly expressed" by the legislature. *Greenberg v. Wolfberg*, 1994 OK 147, 890 P.2d 895, 900, *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990)(footnote omitted). "A presumption favors preservation of common law rights" and the common law remains in full force and effect unless a statute explicitly "or by necessary implication" provides to the contrary. *Rogers v. Meiser*, 2003 OK 6, ¶ 9, 68 P.3d 967, 973 (citations omitted).

¶ 20 Further, we note that this Court has previously addressed the effect, if any, this particular statutory provision had on the common-law duty of care. In the 1914 case of *Midland Valley R.R. Co. v. Littlejohn*, 1914 OK 388, 143 P. 1, we rejected a plaintiff's similar challenge to the virtually identical predecessor of this statutory provision as abrogating the common-law rule regarding a landowner's duty to trespassers and licen-

sees. Plaintiff argued in *Littlejohn* that the common-law rule that a landowner owed no duty to a trespasser or licensee except to not intentionally or wantonly injure him was abrogated by the statutory provision, which appeared to create a legal responsibility or duty of care on "everyone" for ordinary acts of negligence. The *Littlejohn* Court determined in pertinent part as follows:

> this statutory provision [has not been] regarded as more than a **declaration of a general rule of the common law, which is limited by other common-law rules;** and, notwithstanding its long standing in our statutes, our own court has repeatedly and uniformly held ... following the common law, that a landowner owes a trespasser or mere licensee no duty except to not injure him intentionally or wantonly.

*Id.* at 3 (emphasis added).

¶ 21 Underlying the Court's determination in *Littlejohn* is the fundamental concept where there is no duty, there can be no negligence. *Littlejohn* clearly illustrates that this particular statutory provision does not operate to create a duty where one previously did not exist, but merely declares the general common-law rule, which is limited by other common-law rules such as the one at bar. Just as the common-law rule concerning the landowner's duty toward a trespasser or licensee is unmodified by this general declaratory statutory provision, the ballpark owner/operator's common-law duty—or lack thereof—owed to a spectator/invitee likewise remains unmodified. Pursuant to the long-standing rule enunciated in *Littlejohn* and the repeatedly and uniformly held rule enun-

16. The substance of part (a) of this statute was originally enacted as Section 906, Stat. 1890 (§ 998, Rev. Laws 1910) and subsequently renumbered to 76 O.S. § 5(a). The original wording of the provision is identical to its current version with the exception of the 1963 amendment of the language at the end of the provision as follows: "and except as hereinafter provided."

17. Oklahoma adopted the Good Samaritan Act in 1963, at which time the text of § 988 of Revised Laws of 1910 was included *in toto* as § 5(a) of the Good Samaritan Act. Plaintiffs do not argue the facts of this case constitute a rescue situation that would trigger the substantive provisions of the Good Samaritan Act beyond the general in-

troductory paragraph (a). Clearly, the substantive provisions beyond the general introductory paragraph (a) of the Good Samaritan Act do not apply to the facts of this case, as these provisions are specifically directed to medical providers rendering emergency care to an injured person under emergency circumstances. We have held the Good Samaritan Act "abrogates the common-law rescue doctrine for medical providers in an effort to *encourage* them to risk helping strangers in need of succor, *even when they have no duty to render aid.*" *Jackson v. Mercy Health Center, Inc.*, 1993 OK 155, 864 P.2d 839, 843 (footnote omitted). Our holding in *Jackson* remains undisturbed by our pronouncement today.

ciated in *Hull,* the absence of a duty on the part of the owner or occupant of the premises to reconstruct or alter the premises so as to obviate known and obvious dangers remains unchanged despite the existence of the general common-law rule enunciated in 76 O.S. § 5(a).

### C. Plaintiffs argue *Hull* is inconsistent with other Supreme Court cases concerning open and obvious conditions.

¶ 22 The crux of Plaintiffs' argument appears to be the determination of what constitutes an open and obvious condition in any given premises liability case should be a fact question for the jury and not a determination of law for the court. In support of this assertion, Plaintiffs cite two cases, neither of which are factually on point, as neither involve injury to a spectator attending a sports event. *See Jack Healey Linen Service Co. v. Travis,* 1967 OK 213, 434 P.2d 924, 927–28 (slip and fall case) and *Phelps v. Hotel Management, Inc.,* 1996 OK 114, 925 P.2d 891 (plaintiff's head injury by a glass bowl containing seasonal display extending behind bench into seating area of hotel lobby). Although in each of these cases, we concluded there were fact issues for the jury whether a defect on the premises was obvious and apparent or rather, in the nature of a hidden danger, it is clear that the *particular facts and circumstances* of these cases led to this conclusion in each case. The "facts of each particular case are controlling upon the question of negligence...." *Travis,* 434 P.2d at 925 (Syllabus by the Court). *Travis* further provided:

> If ... conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a '*deceptively innocent appearance',* or *its extent could not be anticipated,* neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law. The question is one for the jury.

*Id.* at 928 (emphasis added) (citations omitted).

Similarly, in *Phelps,* we determined "[t]he characteristics of the offending bowl as a

hidden or open hazard at the time of the injury presented an issue of fact rather than one of law." *Phelps,* 925 P.2d at 894. Again, we noted in *Phelps* that on the particular facts presented there, a jury question was raised as to "whether a reasonable person would recognize that the bowl was in such a position that it *appeared perfectly harmless* but in fact presented the potential for injury." *Id.* (emphasis added).

¶ 23 Plaintiffs in this case do not argue that on the facts of this case, the risk of injury to a spectator by a ball while attending a baseball game might be construed as a hazard with a "deceptively innocent appearance" or that its hazardous extent could not have been anticipated. Plaintiffs merely assert that the issue of whether Plaintiff in this case "could appreciate that sitting where he sat in the ballpark would subject him to danger ought to be a jury question." *Hull* held spectators assume "all normal and ordinary risks attendant upon the use of the [ballpark]" and this pronouncement is tantamount to the conclusion that the risk of injury by a foul ball to a spectator seated in an unscreened seating area of a ballpark is an open and obvious danger as a matter of law. *Hull,* 163 P.2d at 982 (Second Syllabus by the Court). We have further determined "[t]he risk of being struck by a batted or thrown ball is one of the natural risks assumed by spectators attending a ball game." *Lang v. Amateur Softball Ass'n of America,* 1974 OK 32, 520 P.2d 659, 662 (citing *Mann v. Nutrilite, Inc.,* 136 Cal.App.2d 729, 289 P.2d 282, 285 (1955)). The rule in *Hull* concerning the open and obvious nature of the danger is fact specific, as are the determinations in both *Travis* and *Phelps.* Therefore, despite the different outcomes reached on the basis of unique factual circumstances, the cases cited by Plaintiffs are not inconsistent with *Hull.*

### IV

### SUMMARY

¶ 24 In sum, we hold the trial court correctly entered judgment in Defendants' favor as a matter of law pursuant to *Hull v. Oklahoma City Baseball Co.,* 1945 OK 194, 163

P.2d 982, which held a spectator seated in an unscreened area of a grandstand at a baseball game assumes all normal or ordinary risks attendant upon the use of the premises. In addition, we reject Plaintiffs' quest for overruling this longstanding case. The trial court's Journal Entry of Judgment is affirmed in its entirety.

¶ 25 Upon Motion to Retain previously granted,

JUDGMENT OF THE TRIAL COURT IS **AFFIRMED.**

¶ 26 **ALL JUSTICES CONCUR.**