2006 OK CIV APP 133

**Brad HARBER, Plaintiff/Appellant,**

v.

**HEBCO, INC., Defendant/Appellee.**

**No. 102,281.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 3, 2006.

Robert Stormont, Oklahoma City, OK, and Larry Goins, Oklahoma City, OK, for Appellant.

Michael A. Bickford, Fuller, Tubb, Pomeroy & Stokes, Oklahoma City, OK, for Appellee.

JANE P. WISEMAN, Presiding Judge.

¶1 Plaintiff, Brad Harber, appeals an order of the trial court granting summary judgment on his claim for overtime pay and penalty against Defendant, HEBCO, Inc. The issue on appeal is whether the undisputed facts show that Plaintiff is an administrative employee exempt from the overtime requirement of the Fair Labor Standards Act (FLSA). Having heard oral argument from counsel and having reviewed the record and applicable law, we find that Plaintiff is an administrative employee and affirm the summary judgment.

## PROCEDURAL HISTORY

¶2 Plaintiff was employed by HEBCO from December 18, 1995, to February 6, 2004. During his last three years of employment,[1] Plaintiff was regularly paid the same amount every two weeks, with periodic raises; he also received annual bonuses. After Plaintiff left his employment on February 6, 2004, he filed an action against HEBCO seeking unpaid overtime pursuant to 29 U.S.C. § 207 and a penalty pursuant to *40 O.S.2001 § 165.3*. On HEBCO's motion, the trial court granted summary judgment on the ground that Plaintiff was an administrative employee who was exempt from overtime pay. Plaintiff appeals the order granting summary judgment.

## STANDARD OF REVIEW

¶3 Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions or other evidentiary materials show there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Tucker v. ADG, Inc.*, 2004 OK 71, ¶11, 102 P.3d 660, 665. We review the trial court's order granting summary judgment under the de novo standard of review. Id.

## ANALYSIS

¶4 Pursuant to § 207(a), an employer generally must compensate its employees at the rate of time and one-half for time worked in excess of 40 hours. However, an employer is not required to pay overtime to an employee who is employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1). Exemptions from the requirement to pay overtime "are to be narrowly construed, and the employer bears the burden of showing 'the employee fits plainly and unmistakenly within the exemption's terms.'" *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir.1996) (quoting *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir.1995)); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

¶5 Although the administrative exemption is not specifically defined in the FLSA, the Department of Labor (DOL) provides guidance through interpretive regulations. "Generally, DOL regulations are entitled to judicial deference ... and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA." *Spradling*, 95 F.3d at 1495 (citation omitted). Therefore, we look to the DOL regulations for guidance.

¶6 To prove that Plaintiff is an exempt administrative employee, HEBCO must show the following:[2] (1) Plaintiff was "compensat-

---

1. Pursuant to 29 U.S.C. § 255(a), the statute of limitations for an ordinary violation of the overtime law is two years, while the statute of limitations for a willful violation is three years. In his response to the motion for summary judgment, Plaintiff contends that HEBCO willfully failed to pay overtime and the three-year statute of limitations should therefore apply. Without deciding the applicable statute of limitations, we analyze the issues in this appeal with reference to Plaintiff's last three years of employment for HEBCO.

2. Because Plaintiff earned more than $250 per week, we will apply the "short test" as set out in 29 C.F.R. § 541.214(a) (2004). *See Koppinger v.*

American Interiors, Inc., 295 F. SupP.2d 797, 800 (N.D.Ohio 2003). The short test relieves HEBCO from having to prove the following requirements under 29 C.F.R. § 541.2 (2004):

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity ..., or

(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

ed on a salary or fee basis"; (2) Plaintiff's primary duty consisted of "either the performance of office or nonmanual work directly related to management policies or general business operations" of HEBCO; and (3) Plaintiff's "performance of such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214 (2004).[3] Plaintiff alleges that all three of these factors present disputed questions of material fact.

## A. Was Plaintiff a salaried employee?

█ ¶ 7 The DOL regulations define a salaried employee as follows:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below,[4] the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section....

3. The regulations regarding exemptions from overtime pay were significantly amended, effective August 2004. Because Plaintiff left his employment at HEBCO on February 6, 2004, we will use the regulations in effect at that time. We also note that the regulations for the three years preceding February 6, 2004, are for all intents and purposes the same as those in effect on February 6, 2004.

4. The "exceptions" provide in relevant part as follows:

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employ-

29 C.F.R. § 541.118(a) (2004). Plaintiff asserts that he was not compensated on a salary basis because once in 1996 "his paycheck was docked because he was not present for the full forty hours." We first note that this one instance occurred approximately five years before the beginning of the relevant time period in question. We fail to see how this instance can be relevant to the three years preceding the termination of Plaintiff's employment.

¶ 8 Plaintiff admitted in his deposition that the incident where his pay was docked "happened one time because [he] needed to take leave, did not have that amount of leave to cover the amount of days [he] needed off, and was docked leave without pay for those days." The "Earnings Statement" attached to Plaintiff's response to the motion for summary judgment bears this out, as it shows Plaintiff took leave without pay. An employee's salaried status will not be affected if he is absent for a day or longer to handle personal affairs and deductions are made from his salary for such absences. 29 C.F.R. § 541.118(a)(2) (2004). Also, salaried status will not be affected if deductions are taken from an employee's pay because he has exhausted his leave allowance under an employer's leave policy for sickness or disability. 29 C.F.R. § 541.118(a)(3) (2004). See also Spradling, 95 F.3d at 1500 ("the regulations allow an employer to make deductions when an

ee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of a day or longer because of sickness or disability may be made before an employee has qualified under such plan, policy or practice, and after he has exhausted his leave allowance thereunder. It is not required that the employee be paid any portion of his salary for such days or days for which he receives compensation for leave under such plan, policy or practice....

29 C.F.R. § 541.118(a)(2), (3).

employee is absent for a day or more for personal reasons, sickness, or disability, without affecting the employee's salaried status"). Applying these regulations, we must conclude that the lack of pay for a period of time when Plaintiff's pay was reduced because he did not have enough accrued leave does not affect his status as a salaried employee.

### B. Did Plaintiff's primary duty consist of office or nonmanual work directly related to management policies or general business operations?

¶ 9 Plaintiff alleges that questions of fact exist as to whether his primary duty consisted of "either the performance of office or nonmanual work directly related to management policies or general business operations" of HEBCO. In particular, Plaintiff stated in his response to the motion for summary judgment and testified in his deposition that he performed manual labor, such as replacing ceiling tiles, running wires in the ceiling and walls, hauling trash from various warehouse locations, and replacing keyboards. Plaintiff stated he spent 25% of his time performing "manual labor." Plaintiff argues, "Surely these are not the tasks of an Administrator or Manager." He also states that he did not have management responsibilities or authority and was never "allowed to make or directly impact management decisions."

¶ 10 Again, we look to the DOL regulations for guidance in answering Plaintiff's arguments. "Nonmanual work" refers to "office work" and restricts the exemption to "white-collar" employees. 29 C.F.R. § 541.203(a) (2004). "If the work performed is 'office' work it is immaterial whether it is manual or nonmanual in nature." Id. Although the determination of "primary duty" must be based on all the facts of a particular

case, the amount of time spent in performing nonmanual labor is a useful guide in determining whether nonmanual work is an employee's primary duty. 29 C.F.R. § 541.103 (2004). "In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." Id. Considering Plaintiff's testimony that only 25% of his work was manual and looking at the descriptions and testimony as to the bulk of his duties, we conclude that Plaintiff's primary duty consisted of office or nonmanual work.

¶ 11 We must also determine whether this office or nonmanual work was "directly related to management policies or general business operations." This phrase describes those types of activities that are of "substantial importance" to the "administrative operations of a business as distinguished from 'production.'" 29 C.F.R. § 541.205(a) (2004). The phrase is "not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole," and it includes work by "a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." 29 C.F.R. § 541.205(c) (2004).[5]

¶ 12 Analyzing the evidence of Plaintiff's duties for HEBCO, we conclude that his work was "directly related to management policies or general business operations." Plaintiff described HEBCO's business as "technical documentation, converting documents from one format to another, scanning and converting from analog to digital, that kind of thing." Plaintiff's duties were inte-

---

5. Section 541.205(c) gives examples of types of work that may or may not be of substantial importance to the management or operations of the business. For example:
   If all a [statistician] does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations. . . . Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant. . . . Where such work is of substantial importance to the management or operation of the business, even though it may be limited to purchasing for a particular department of the business, it is directly related to management policies or general business operations.
   29 C.F.R. § 541.205(c)(3), (4) (2004).

gral to the operation of HEBCO's business.[6]

¶ 13 Plaintiff had the responsibility of insuring that the information systems were functioning and maintained in an accurate and sufficient manner. Plaintiff designed and built the network.[7] The speed of the network was very important to HEBCO's business, as was the capacity of both the hardware and the software. Security of the network was also important as HEBCO's customers were government contractors and subcontractors.

¶ 14 To perform the duty of maintaining the network, Plaintiff interfaced with users of the system by troubleshooting, fixing or replacing software, and by upgrading hardware and software; dealt with internet connectivity issues; maintained backups of data; kept outdated equipment running by recommending updates and upgrades; secured the system against hackers and viruses and kept the users apprized of worms and viruses; maintained internet speed; diagnosed network problems; designed a web page for new employees explaining use of the computers based on information provided to him by management; maintained mail, web, and File Transfer Protocol logs; researched and drafted proposals for purchase of new equipment, software, and hardware; dealt with the internet provider and negotiated a contract for telephone service; obtained a free template for a purchase order database, modified it for HEBCO's use, and made it available to users; dealt with Y2K compliance issues; maintained software and licenses; designed, setup, and maintained the HEBCO IntraNet; and obtained a special certification through Microsoft for certified systems engineers.

¶ 15 Plaintiff also attended about 20% of the managers' meetings at HEBCO's Oklahoma City office when they needed to consult him about technical questions. For instance, he participated in the meetings concerning problems with large attachments sent by email; HEBCO's outdated server made it difficult to receive large attachments. Plaintiff proposed alternatives to deal with the issue. He attended a meeting of HEBCO's "location managers" in Eureka Springs, Arkansas. At that time, they were having problems with the mail server, which was critical because "the core of [HEBCO] is technology and the core of our technology is communication and the core of communication is e-mail." He attended the meeting "to provide recommendations on where we put the money, because we had a big long list of things that need[ed] to be bought [and] to prioritize that list."

¶ 16 Because of its work for government contractors and subcontractors, HEBCO was required to meet government security standards. On April 1, 2001, Plaintiff became the facility security officer (FSO), a position that he held until he left employment at HEBCO. When he first took over the FSO position, he had to "clean up a mess." As the FSO, he had to get the records in order, identify computer components and software, report to a government official, notify the government

---

**6.** According to Plaintiff's business cards, his title was "Corporate Information Systems Manager and Facility Security Officer." Plaintiff testified that his "working title" would have been "Computer Systems Engineer," and HEBCO documents identified him as "Key Staff" and "System Administrator." ("Staff employees" are "administrative employees"—they are those employees "who can be described as staff rather than line employees, or as functional rather than departmental heads." 29 C.F.R. § 541.201(a)(2) (2004).) In one email, Plaintiff referred to himself as a "manager" and he signed letters and communications with the titles "Corporate Information Systems Manager" and "Facility Security Officer." Although "[a] title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status," 29 C.F.R. § 541.201(b) (2004), it is helpful when considered in the context of an employee's duties. This is particularly true when considering an employee's self-described title, such as the "working title" that Plaintiff gave himself, as well as the titles he used in letters and emails.

**7.** Although Plaintiff testified in his deposition that he designed and built the network, he attempted in his responsive "affidavit" to dispute this testimony by stating that he did not build the network because there was a network in place before he was hired. " '[I]t is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.' " *Poff v. Oklahoma Farmers Union Mut. Ins. Co.,* 2006 OK CIV APP 3, ¶ 14, 127 P.3d 646, 648 (quoting *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988)).

official of changes, and insure that the employees had their annual security training. While Plaintiff spent 40% of his time on this task, he also had to keep up with his responsibility of maintaining the network.

¶ 17 Plaintiff attended a four-day seminar on completing "communications security" reports. In his capacity as the FSO, Plaintiff became responsible for the "closed room," a secured area that only those people with the proper security clearance, such as Plaintiff, could access. To comply with government regulations, Plaintiff proposed changes to the closed room; although he did not design the room, he headed up the project by communicating the government requirements and negotiating with the landlord to have the changes made. After Plaintiff took over the FSO position, HEBCO regained its "excellent" rating.

¶ 18 It is clear from Plaintiff's description of his job duties that his work for HEBCO was "directly related to management policies or general business operations." When we consider the nature of HEBCO's business, Plaintiff's many duties as they related to maintaining information systems were of substantial importance to HEBCO's operations. For most of the time that he was employed by HEBCO, he was the person who did this work. Furthermore, Plaintiff's work as the facility security officer was of significant importance to HEBCO's operations. A facility security officer was absolutely necessary because of the work HEBCO did with government contractors and subcontractors.

¶ 19 Courts in other jurisdictions have also determined that employees with duties similar to Plaintiff's were exempt administrative employees because their primary duties were nonmanual work directly related to management policies or general business operations. An Ohio federal district court reached this conclusion in *Koppinger v. American Interiors, Inc.*, 295 F. SupP.2d 797, 802 (N.D.Ohio 2003), regarding a company's information technology employee who was responsible for maintaining the company's computer system. His duties were described as follows:

[H]is position involved maintaining, upgrading, and administrating [*sic*] the com-

puter system. While some of his work may be considered manual in that he necessarily had to perform some physical actions (installing hardware/software, etc.), those actions do not negate the exemption because plaintiff's deposition testimony establishes the prominence of the problem-solving, planning, and purchasing duties.... Plaintiff was responsible for the computer system from end to end, a computer system that was clearly integral to defendant's general business operations. Plaintiff's work, furthermore, was comprehensive in nature, and ranged from investigating problems, to considering possible solutions and implementing, in plaintiff's opinion, the best solution.

The court concluded he was an exempt administrative employee.

¶ 20 In *Bagwell v. Florida Broadband, LLC,* 385 F. SupP.2d 1316 (S.D.Fla.2005), the employee worked for a company that sold internet access. A federal district court concluded that his primary duty consisted of office work directly related to management policies or general business operations.

Plaintiff engaged in advising management, planning, negotiating, promoting sales, and business research. Plaintiff's job involved finding network solutions to complex problems of [employer] and its customers.... Plaintiff's primary duty as a Network Operation Engineer was developing, improving, and making [employer's] network system function reliably. Plaintiff worked at a responsible level and performed work directly related to management policies or the operation of [employer].

*Id.* at 1324–25. The court determined that the employee was an exempt administrative employee.

¶ 21 We conclude that Plaintiff's primary duties were office or nonmanual work directly related to HEBCO's management policies or general business operations.

C. *Did Plaintiff's performance of such primary duty include work requiring the exercise of discretion and independent judgment?*

■ ¶ 22 "In general, the exercise of discretion and independent judgment involves

the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a) (2004).[8] While the phrase implies that "the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance," the phrase "does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.207(a), (e) (2004). The decision by the employee "may consist of recommendations for action rather than the actual taking of action" and the employee's decision may be subject to review. 29 C.F.R. § 541.207(e) (2004). Discretion and independent judgment must be exercised on a customary and regular basis, at a "frequency which must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.207(g) (2004).

¶ 23 Many of Plaintiff's duties, as outlined above, show that he exercised discretion and independent judgment in doing his job, *e.g.*, he performed troubleshooting work; designed a web page; created and maintained both the network and IntraNet; maintained logs on his own initiative; solved software problems by fixing them or seeking the manufacturer's assistance; performed hardware and software upgrades; and dealt with the internet service provider. Plaintiff also testified that, because HEBCO could not afford the best computer equipment, he would do research to figure out what best fit HEBCO's needs, which alternatives were available, and what was affordable for HEBCO. If he thought they could get more reliability for a little more money, he would try to convince the budgeteers to buy it.

¶ 24 Working from specifications given to him by users of the equipment, Plaintiff would determine what was the best equipment and recommend its purchase. He made recommendations and proposals on up-

grades and updates for the outdated equipment, as well as for software, especially for new employees. Plaintiff would purchase the equipment and software that was approved. Plaintiff also made recommendations to achieve the goal of maintaining the fastest internet access possible, because speed of the network was very important to HEBCO. Plaintiff attended management meetings to discuss many of these issues. For one meeting, he was asked to evaluate and prioritize HEBCO's equipment needs and make appropriate recommendations. Plaintiff, along with the managers, had the highest levels of access rights to the network.

¶ 25 Plaintiff also performed other duties showing that he exercised discretion and independent judgment. Regarding his position as facility security officer, Plaintiff oversaw a project to create a secure "closed room" for HEBCO. He also dealt directly with government officials on compliance issues and made sure that other employees had adequate training. Plaintiff participated in the hiring process when HEBCO hired William Hicks to assist with network duties. Plaintiff knew Hicks before the interview process, and he recommended Hicks for the job after talking with two or three other people for the job. Although Plaintiff was not Hicks' supervisor or manager, Hicks worked alongside Plaintiff "so everything he learned and was able to do faster, meant less work that [Plaintiff] had to do and less overtime [Plaintiff] had to work." Plaintiff was so pleased with Hicks' performance that he recommended him for a raise.

¶ 26 In *Koppinger*, the court concluded that an employee with a job similar to Plaintiff's "regularly, if not daily" exercised discretion and independent judgment.

> [P]laintiff, charged with managing the computer systems from end to end for defendant, decided what needed to be done and when it needed to be done, with almost no supervision. When called on by computer users to evaluate and/or fix a problem, plaintiff determined what priority the

---

8. The regulations give examples of areas where the "discretion and independent judgment" element has been misunderstood and misapplied, especially in cases involving (1) a distinction "between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards," and (2) "employees making decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b) (2004).

need had, and also, what course of action to take.

Plaintiff exercised independent judgment and discretion on several occasions with regard to suggestions for new hardware, software, or server installation when the computer system needed new components. While the owner of the company certainly had the final say, the regulations make clear that this fact does not negate the applicability of the exemption. Plaintiff regularly exercised independent judgment and discretion in purchasing replacement/repair items, not only in determining what to purchase and when, but in determining whether he needed to request approval for such purchases, depending on the size of the purchase. His judgments in these areas were seldom (if ever) reversed, and almost routinely followed.

*Koppinger,* 295 F. SupP.2d at 805.

¶ 27 In *Bagwell,* the court also determined that the employee exercised discretion and independent judgment:

Although Plaintiff was guided by the CEO and Director of Engineering, Plaintiff had the discretion to suggest hiring, pay rises [*sic*], equipment purchases, and ways for improving and correcting the network. In addition, Plaintiff sometimes spent most of his day problem solving and thinking about ways to improve the net-work.... Plain-

tiff's work was not routine, but varied dramatically from day to day.

385 F. SupP.2d at 1326.

¶ 28 We conclude that Plaintiff's performance of his primary duties included work requiring the exercise of discretion and independent judgment.

### CONCLUSION

¶ 29 We find that the undisputed material facts, and the inferences to be drawn from those facts, show that (1) Plaintiff was a salaried employee; (2) his primary duty consisted of the performance of office or non-manual work directly related to management policies or general business operations of HEBCO; and (3) the performance of his primary duties included work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.214 (2004). Plaintiff was therefore an administrative employee exempt from overtime pay.[9] The summary judgment in favor of HEBCO is therefore affirmed.

¶ 30 AFFIRMED.

GOODMAN, J., and REIF, J. (sitting by designation), concur.

---

9. Because Plaintiff is exempt from overtime pay requirements, HEBCO cannot be held liable for a penalty for failing to pay overtime.