**2016 OK 97**

**Jhonhenri Jabrille LEE,**
**Plaintiff/Petitioner,**

v.

**Diana Catalina Salgado BUENO,**
**Defendant/Respondent.**

**No. 114,563**

Supreme Court of Oklahoma.

FILED SEPTEMBER 20, 2016

Rick W. Bisher, Ryan, Bisher, Ryan & Simons, Oklahoma City, Oklahoma, for Plaintiff/Petitioner

Rodney D. Stewart and Joshua I. Peach, Stewart Law Firm, Oklahoma City, Oklahoma, for Defendant/Respondent

Sarah A. Greenwalt, Assistant Solicitor General, and Mithun S. Mansinghani, Deputy Solicitor General, Oklahoma City, Oklahoma, for the State of Oklahoma

Rex Travis and Paul Kouri, Travis Law Office, Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Association for Justice

Erin A. Renegar and Caroline J. Lewis, Wiggins, Sewell & Ogletree, for Amicus Curiae Oklahoma Association of Defense Counsel

COMBS, V.C.J.:

¶1 The primary question before this Court is the constitutionality of 12 O.S. 2011 § 3009.1, a section of the Oklahoma Evidence Code limiting the admissibility of evidence of medical costs in personal injury actions. Plaintiff/Petitioner asserts, broadly, that 12 O.S. 2011 § 3009.1: 1) is an unconstitutional special law prohibited by Okla. Const. art. 5, § 46; 2) denies personal injury plaintiffs access to the courts and their right to a trial by jury under Okla. Const. art. 2, §§ 6 & 19; 3) violates the due process rights of personal injury plaintiffs; 4) violates the separation of powers limitations found in Okla. Const. art. 4, § 1 by attempting to control the rules of evidence; and 5) abolishes the collateral source rule for insured victims of torts. This Court determines Plaintiff/Petitioner has not met the burden required to demonstrate the unconstitutionality of 12 O.S. 2011 § 3009.1, and the statute controls over the collateral source rule to the extent the two might conflict.

## FACTS AND PROCEDURAL HISTORY

¶2 On or about October 9, 2014, Plaintiff/Petitioner Jhonhenri Jabrille Lee (Lee) was involved in a motor vehicle collision with Defendant/Respondent Diana Catalina Salgado Bueno (Bueno). Lee was driving a vehicle that was struck from behind by a vehicle driven by Bueno at the intersection of NW Expressway and Blackwelder in Oklahoma City, Oklahoma. The collision pushed Lee's vehicle into the vehicle in front of him. After the collision, Lee sought medical treatment for injuries he sustained. At the time of the collision, Lee was insured under a policy with Blue Cross Blue Shield. Lee filed suit against Bueno on July 14, 2015, alleging he sustained injuries for which he incurred property damage, medical expenses, pain and suffering, mental anguish, and was prevented from transacting business, as a result of Bueno's actions and non-actions. Lee claimed damages in excess of $25,000.

¶3 On September 15, 2015, prior to the commencement of discovery, Lee filed a Motion for Declaratory Relief Regarding the Constitutionality of 12 O.S. 2011 § 3009.1. In his motion, Lee asserted he incurred approximately $10,154 in medical expenses for treatment of injuries caused by Bueno's alleged negligence. Lee further asserted expenses totaling $8,112.81 were submitted to his insurer, Blue Cross Blue Shield, who paid $2,845.11. Lee argued in his motion that 12 O.S. 2011 § 3009.1 is: 1) unconstitutional as a special law in violation of Okla. Const. art. 5, § 46; 2) unconstitutional because it violates his right to due process and a trial by jury; and 3) because it is unconstitutional, the collateral source rule should apply.

¶4 Bueno filed a Response and Objection to Plaintiff's Motion for Declaratory Relief on October 16, 2015. Bueno challenged both the merits of Lee's constitutionality claims and also asserted that Lee's motion was premature. The trial court denied Lee's request for declaratory relief in a ruling memorialized on October 29, 2015, and granted Lee's oral request for certification of its order for immediate appeal, over Bueno's objection. The trial court filed its certification order on December 7, 2015.

¶5 Lee filed a Petition for Certiorari Certified Interlocutory Order on December 29, 2015. This Court granted Lee's petition on February 16, 2016, and the cause was assigned to this office. On February 18, 2016, the Attorney General gave notice of his intent to exercise his right to be heard on the constitutional issues presented. The Attorney General filed his brief on April 4, 2016. This Court also granted the requests of the Oklahoma Association for Justice and the Oklahoma Association of Defense Counsel to file briefs as Amici Curiae. Their briefs were filed on March 28, 2016, and April 4, 2016, respectively.

## STANDARD OF REVIEW

¶6 At issue in this cause is the constitutionality and application of 12 O.S. 2011 § 3009.1. Issues of a statute's constitutional validity, construction, and application are questions of law subject to this Court's *de novo* review. *Butler v. Jones ex rel. State ex rel. Okla. Dep't of Corr.*, 2013 OK 105, ¶5, 321 P.3d 161; *Gilbert v. Sec. Fin. Corp. of Okla., Inc.*, 2006 OK 58, ¶2, 152 P.3d 165;

*Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8, 33 P.3d 302. In conducting a *de novo* review of a trial court's legal rulings, this Court possesses plenary, independent, and non-deferential authority to examine the issues presented. *Crownover v. Keel,* 2015 OK 35, ¶ 12, 357 P.3d 470; *Sheffer v. Carolina Forge Co., L.L.C.,* 2013 OK 48, ¶ 10, 306 P.3d 544; *Martin v. Aramark Servs., Inc.,* 2004 OK 38, ¶ 4, 92 P.3d 96.

¶ 7 In considering the constitutionality of a statute, courts are guided by well-established principles and a heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality. *Douglas v. Cox Ret. Properties, Inc.,* 2013 OK 37, ¶ 3, 302 P.3d 789; *Thomas v. Henry,* 2011 OK 53, ¶ 8, 260 P.3d 1251. Every presumption is to be indulged in favor of a statute's constitutionality. *Douglas,* 2013 OK 37, ¶ 3, 302 P.3d 789; *Thomas,* 2011 OK 53, ¶ 8, 260 P.3d 1251; *Fent v. Okla. Capitol Improvement Auth.,* 1999 OK 64, ¶ 3, 984 P.2d 200. A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. *Rural Water Sewer and Solid Waste Mgmt. v. City of Guthrie,* 2010 OK 51, ¶ 15, 253 P.3d 38; *Kimery v. Public Serv. Co. of Oklahoma,* 1980 OK 187, ¶ 6, 622 P.2d 1066; *Matter of Daniel, Deborah and Leslie H.,* 1979 OK 33, ¶ 10, 591 P.2d 1175. If two possible interpretations of a statute are possible, only one of which would render it unconstitutional, a court is bound to give the statute an interpretation which will render it constitutional, unless constitutional infirmity is shown beyond a reasonable doubt. *Fent,* 1999 OK 64, ¶ 3, 984 P.2d 200; *Gilbert Cent. Corp. v. State,* 1986 OK 6, ¶ 7, 716 P.2d 654; *Okla. State Election Bd. v. Coats,* 1980 OK 65, ¶ 12, 610 P.2d 776.

¶ 8 The nature of this Court's inquiry is limited to constitutional validity, not policy. It is not the place of this Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition. *Douglas,* 2013 OK 37, ¶ 3, 302 P.3d 789; *In re Assessments for Year 2005 of Certain Real Property Owned by Askins Properties, L.L.C.,* 2007 OK 25, ¶ 12, 161 P.3d 303; *Fent,* 1999 OK 64, ¶ 4, 984 P.2d 200. A court's function, when the constitutionality of a statute is put at issue, is limited to a determination of the validity or invalidity of the legislative provision and a court's function extends no farther in our system of government. *Douglas,* 2013 OK 37, ¶ 3, 302 P.3d 789; *Edmondson v. Pearce,* 2004 OK 23, ¶ 17, 91 P.3d 605; *Fent,* 1999 OK 64, ¶ 4, 984 P.2d 200.

## I.

## TITLE 12 O.S. 2011 § 3009.1 IS NOT AN UNCONSTITUTIONAL SPECIAL LAW PROHIBITTED BY OKLA. CONST. ART. 5, § 46.

¶ 9 At issue in this cause is 12 O.S. 2011 § 3009.1, which provides:

A. Upon the trial of any civil case involving personal injury, the actual amounts paid for any doctor bills, hospital bills, ambulance service bills, drug bills and similar bills for expenses incurred in the treatment of the party shall be the amounts admissible at trial, not the amounts billed for expenses incurred in the treatment of the party. If, in addition to evidence of payment, a signed statement acknowledged by the medical provider or an authorized representative that the provider in consideration of the patient's efforts to collect the funds to pay the provider, will accept the amount paid as full payment of the obligations is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the amount paid, then bills in excess of the amount paid but not more than the amount of the lien shall be admissible. If no payment has been made, the Medicare reimbursement rates in effect when the personal injury occurred shall be admissible if, in addition to evidence of nonpayment, a signed statement acknowledged by the medical provider or an authorized representative that the provider, in consideration of the patient's efforts to collect the funds to pay the provider, will accept payment at the Medicare reimbursement rate less cost of recovery as provided in Medicare regulations as full payment of the obligation is also admitted. The statement shall be part of the record as an exhibit

but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the Medicare rate, then bills in excess of the amount of the Medicare rate but not more than the amount of the lien shall be admissible.

B. This section shall apply to civil cases involving personal injury filed on or after November 1, 2011.

Title 12 O.S. 2011 § 3009.1 serves to limit certain types of evidence admissible by parties in the trial of any civil case involving personal injury. Functionally, 12 O.S. 2011 § 3009.1 limits admissibility of evidence concerning medical costs in personal injury litigation to what has actually been paid or is owed for a party's medical treatment, rather than the amount billed for that treatment.[1]

¶10 Though Title 12 O.S. 2011 § 3009.1 is the version of the statute applicable in this cause, it is not the current version of the statute. Section 3009.1 was amended by 2015 Okla. Sess. Laws c. 337, § 1, eff. November 1, 2015. The current provision, 12 O.S. Supp. 2015 § 3009.1, provides:

A. Upon the trial of any civil action arising from personal injury, the actual amounts paid for any services in the treatment of the injured party, including doctor bills, hospital bills, ambulance service bills, drug and other prescription bills, and similar bills shall be the amounts admissible at trial, not the amounts billed for such expenses incurred in the treatment of the party. If, in addition to evidence of payment, a party submits a signed statement acknowledged by the medical provider or an authorized representative or sworn testimony that the provider will accept the amount paid as full payment of the obligations, the statement or testimony shall be admitted into evidence. The statement or testimony shall be part of the record as an exhibit but need not be shown to the jury. If a medical provider has filed a lien in the case for an amount in excess of the amount paid, then the bills in excess of the amount paid, but not more than the amount of the lien, shall be admissible.

B. If no payment has been made, the Medicare reimbursement rates in effect when the personal injury occurred, not the amounts billed, shall be admissible if, in addition to evidence of nonpayment, a party submits a signed statement acknowledged by the medical provider or an authorized representative or sworn testimony that the provider will accept payment at the Medicare reimbursement rate less cost of recovery as provided in Medicare regulations as full payment of the obligation. The statement or testimony shall be admitted into evidence and shall be part of the record as an exhibit but need not be shown to the jury. If a medical provider has filed a lien in the case for an amount in excess of the Medicare rate, then the bills in excess of the amount of the Medicare rate, but not more than the amount of the lien, shall be admissible.

C. If no bills have been paid, or no statement acknowledged by the medical provider or sworn testimony as provided in subsections A and B of this section is provided to the opposing party and listed as an exhibit by the final pretrial hearing, then the amount billed shall be admissible at trial subject to the limitations regarding any lien filed in the case.

D. This section shall apply to civil actions arising from personal injury filed on or after November 1, 2015.

The Legislature clearly expressed its intent that the changes should not be applied retro-

---

1. The Attorney General, in his brief on the Constitutional Claims, emphasizes many policy reasons that he apparently believes are served by 12 O.S. 2011 § 3009.1. The Attorney General specifically points out inflationary billing practices as one explanation for soaring modern health care costs, arguing:

> Physicians are in the regular practice of overbilling for services in order to ultimately settle the bill for a higher amount than they would otherwise. Accordingly, there are typically two separate prices for medical services—the "list price," which is the starting point for negotiations; and the "actual price," which is what is ultimately paid. Because health care providers know that the higher they bill, the higher the negotiated price is going to be, there is often wide variation among these two prices. The list prices have no basis in reality, but instead are "grossly inflated because they are set to be discounted rather than paid."

Attorney General's Brief on Constitutional Claims, p. 1 (Internal footnotes omitted).

actively, as 12 O.S. Supp. 2015 § 3009.1(D) provides "[t]his section shall apply to civil actions arising from personal injury filed on or after November 1, 2015." As Lee's cause was filed before that date, 12 O.S. 2011 § 3009.1 is the applicable statute. However, it is worth noting at this juncture that 12 O.S. Supp. 2015 § 3009.1(C) is a substantive change to the statute that permits the admission of the amount billed at trial if no bills have been paid or the statement or sworn testimony provided for in 12 O.S. Supp. 2015 § 3009.1(A) and (B) are not provided by the final pretrial hearing.

■ ¶11 Lee asserts 12 O.S. 2011 § 3009.1 is an unconstitutional special law in violation of Okla. Const. art. 5, § 46, which provides in pertinent part:

> The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate....

Okla. Const. art. 5, § 46 specifically prohibits the Legislature from enacting special laws dealing with the subject areas it specifies. *Wall v. Marouk*, 2013 OK 36, ¶ 4, 302 P.3d 775. *See Reynolds v. Porter*, 1988 OK 88, ¶ 17, 760 P.2d 816. The terms of Okla. Const.

art. 5, § 46 command that court proceedings be symmetrical and apply equally across the board for an entire class of similarly situated persons or things. *Zeier v. Zimmer, Inc.*, 2006 OK 98, ¶ 13, 152 P.3d 861; *State ex rel. Macy v. Bd. of County Comm'rs of Okla. County*, 1999 OK 53, ¶ 14, 986 P.2d 1130. *See Reynolds*, 1988 OK 88, ¶ 14, 760 P.2d 816.

■ ¶ 12 When a law is challenged under Okla. Const. art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things. *Zeier*, 2006 OK 98, ¶ 13, 152 P.3d 861; *Reynolds*, 1988 OK 88, ¶ 17, 760 P.2d 816.[2] This Court set out the criteria for determining a prohibited special law under Okla. Const. art. 5, § 46 in more detail in *Wall v. Marouk*, where we explained:

> A special law confers some right or imposes some duty on some but not all of the class of those who stand upon the same footing and same relation to the subject of the law. A law is special if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Special laws apply to less than the whole of a class of persons, entities or things standing upon the same footing or in substantially the same situation or circum-

2. In *Reynolds v. Porter*, 1988 OK 88, ¶¶ 13–17, 760 P.2d 816, this court explained the interaction between Okla. Const. art. 5, § 46 which prohibits certain types of special laws, and Okla. Const. art. 5, § 59, which generally allows the legislature to pass special laws when a general law is not applicable. Okla. Const. art. 5, § 59 provides: "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." Under Okla. Const. art. 5, § 59 a three-pronged inquiry is necessary to determine if a statute is constitutional: 1) Is the statute a special or general law? 2) If the statute is a special law, is a general law applicable? and 3) If a general law is not applicable, is the statute a permissible special law? *Reynolds*, 1988 OK 88, ¶ 13, 760 P.2d 816. If Okla. Const. art. 5, § 46 is implicated, however, only the first prong is necessary. The Court explained:

> Under § 46 our constitutional review of a statute stops with the first prong: Is the statute a special or general law? If the statute is special, § 46 absolutely and unequivocally prohibits its passage by the legislature. The second prong is unnecessary because the constitutional fathers predetermined that, for the 28 subjects enumerated in § 46, a general law is always applicable. In other words, in 46 our constitutional fathers isolated and set aside for protection against legislative tampering subjects to which general law must always be tailored. The third prong is not implicated because a special statute under § 46 is never permissible. In a § 46 attack, the only issue to be resolved is whether a statute upon a subject enumerated in that section targets for different treatment less than an entire class of similarly situated persons or things.

*Reynolds*, 1988 OK 88, ¶ 17, 760 P.2d 816 (footnotes omitted).

stances, and thus do not have a uniform operation. The shortcoming of a special law is that it does not embrace all the classes that it should naturally embrace, and that it creates preference and establishes inequality. It applies to persons, things, and places possessed of certain qualities or situations and excludes from its effect other not dissimilar persons, things, or places.

2013 OK 36, ¶5, 302 P.3d 775 (footnotes omitted).

¶13 Lee argues the general class of which he is a member is the class of plaintiffs filing a claim based on bodily injury under 23 O.S. 2011 § 61.2(A), which provides: "[i]n any civil action arising from a claimed bodily injury, the amount of compensation which the trier of fact may award a plaintiff for economic loss shall not be subject to any limitation." The core of Lee's argument is that 12 O.S. 2011 § 3009.1 is an unconstitutional special law because it further subdivides this general class of plaintiffs filing a claim based on bodily injury into classes that receive differential treatment based, effectively, on their insurance status or the decisions made by their medical treatment providers. Lee argues 12 O.S. 2011 § 3009.1 places restrictions on subclasses of plaintiffs filing bodily injury claims by prohibiting those classes from submitting the full amount of their medical bills.

¶14 The effects of 12 O.S. 2011 § 3009.1 are better understood by examining its component parts in sequence. The first portion of 12 O.S. 2011 § 3009.1(A) provides:

Upon the trial of any civil case involving personal injury, the actual amounts paid for any doctor bills, hospital bills, ambulance service bills, drug bills and similar bills for expenses incurred in the treatment of the party shall be the amounts admissible at trial, not the amounts billed for expenses incurred in the treatment of the party.

This provision appears straightforward on the surface, and limits all parties in a personal injury action to admitting evidence of the amount paid for medical services, rather than the amount billed. Differential outcomes, however, can arise in the amounts admissible. For example: an injured party is insured, and their insurer satisfies part, but not all, of their medical bill. If their medical provider is contractually obligated to accept what the insurer paid as payment in full, the party is prohibited from admitting the full amount of the original bill into evidence, and is limited to only the amount their insurer paid. In contrast, an uninsured party who paid the full amount of their medical bill would be permitted to admit that amount into evidence.

¶15 The next portion of 12 O.S. 2011 § 3009.1(A) provides:

If, in addition to evidence of payment, a signed statement acknowledged by the medical provider or an authorized representative that the provider in consideration of the patient's efforts to collect the funds to pay the provider, will accept the amount paid as full payment of the obligations is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury.

Per this provision, if a party's medical provider is willing to accept less than the amount originally billed in payment, evidence that they will do so is admissible in addition to the amount paid. 12 O.S. 2011 3009.1(A) then states:

Provided, if a medical provider has filed a lien in the case for an amount in excess of the amount paid, then bills in excess of the amount paid but not more than the amount of the lien shall be admissible.

While it still does not allow parties to admit the amount originally billed, this provision allows parties to admit evidence of the amount they actually owe their medical treatment provider, in addition to the amount paid.

¶16 Title 12 O.S. 2011 3009.1(A) then states:

If no payment has been made, the Medicare reimbursement rates in effect when the personal injury occurred shall be admissible if, in addition to evidence of nonpayment, a signed statement acknowledged by the medical provider or an authorized representative that the provider, in consideration of the patient's efforts to collect the funds to pay the provider, will accept payment at the Medicare reimbursement rate less cost of recovery as provided in Medicare regulations as full

payment of the obligation is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury.

This provision arguably applies to a different subclass of parties: those whose medical providers are willing to accept the Medicare reimbursement rate in lieu of the full amount billed. Those parties are then limited to admitting evidence of those rates and the willingness of the provider to accept them. Assuming the reimbursement rate is lower than a party's medical bill, this would potentially lower the amount of damages reflected in evidence. Finally, 12 O.S. 2011 3009.1(A) provides:

Provided, if a medical provider has filed a lien in the case for an amount in excess of the Medicare rate, then bills in excess of the amount of the Medicare rate but not more than the amount of the lien shall be admissible.

Once again, the statute makes an exception when a provider has filed a lien, allowing parties to admit evidence of the additional amount they owe.

¶ 17 Lee argues that these conditions on admissibility create subclasses based on criteria that individual plaintiffs like him have no control over: namely, the decisions of their insurers and medical treatment providers. He argues 12 O.S. 2011 3009.1 punishes personal injury claimants that obtain insurance by preventing them from submitting evidence of, and therefore obtaining, the full measure of their damages.

¶ 18 Lee relies on prior decisions of this Court in support of his argument that 12 O.S. 2011 § 3009.1 is an unconstitutional special law. The most recent of these cases is *Montgomery v. Potter*, 2014 OK 118, 341 P.3d 660. In *Montgomery*, this Court considered a special law challenge to a statute preventing uninsured motorists from recovering certain non-economic damages such as pain and suffering in civil actions arising from automobile accidents. 2014 OK 118, ¶¶ 3–8, 341 P.3d 660. The statute at issue in that cause, 47 O.S. 2011 § 7–116(A), provided:

Except as provided in subsection B of this section, in any civil action to recover damages arising out of an accident involving the operation of a motor vehicle or for any claim against the motor vehicle liability insurance coverage of another party, the maximum amount that a plaintiff or claimant may receive, if the plaintiff or claimant is not in compliance with the Compulsory Insurance Law, shall be limited to the amount of medical costs, property damage, and lost income and shall not include any award for pain and suffering.

The plaintiffs in *Montgomery* argued the statute was an impermissible special law because it affected only victims of auto accidents who were uninsured, carving out this special class from the more general class of all victims of auto accidents and subjecting them to differential treatment. 2014 OK 118, ¶ 5, 341 P.3d 660.

¶ 19 This Court agreed. We noted the general class of similarly situated plaintiffs in cases of automobile negligence, as well as the class identified in 23 O.S. 2011 § 61, which allowed all plaintiffs with bodily injury to recover for pain and suffering. *Montgomery*, 2014 OK 118, ¶ 7, 341 P.3d 660. We determined 47 O.S. 2011 § 7–116 held uninsured drivers to different and much stricter standards than other plaintiffs in automobile negligence cases. *Montgomery*, 2014 OK 118, ¶ 7, 341 P.3d 660. Specifically, this Court determined:

Section 7–116 creates an impermissible special class by restricting damages in civil negligence actions for victims who also happen to be uninsured drivers while the general class of automobile accident victims is not prevented from the recovery of damages for pain and suffering. Because 47 O.S.2011, § 7–116 impacts less than an entire class of similarly situated claimants it is under-inclusive and, therefore, we find it to be an unconstitutional special law prohibited by art. 5, § 46 of the Oklahoma Constitution.

¶ 20 Lee also relies heavily on two related cases decided by this Court concerning the need for an expert affidavit attached to petitions for medical negligence. In *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, this Court considered 63 O.S. Supp. 2003 § 1–1708.1E and determined that the requirement for an affidavit of merit was unconstitutional as a violation of Okla. Const. art. 5, § 46. This Court noted the affidavit of merit require-

ment immediately divided tort victims alleging negligence into two classes: those pursuing a cause of action in negligence generally and those naming medical professionals specifically as defendants. *Zeier,* 2006 OK 98, ¶ 14, 152 P.3d 861.

¶ 21 The affidavit requirement this Court examined in *Zeier* created a specific procedural hurdle for a subclass carved out of the general class of negligence plaintiffs:

> The professional affidavit requirement of 63 O.S. Supp. 2003 § 1–1708.1E has no counterpart in the general law of tort claims. Only medical malpractice claimants are burdened with the necessity of obtaining a medical opinion to support the filing of a petition in the district court. Furthermore, only medical malpractice defendants, not negligence defendants generally, are granted what is a mandated discovery privilege before a petition for recovery will ever be heard—although the statute prohibits the admitting of the expert's opinion at trial or its use in discovery, it allows the defendant to obtain a copy of the same. This is precisely the vice that the Oklahoma Constitution and this Court have long guarded against—the granting of preference to some and the denial of equality to a class.

*Zeier,* 2006 OK 98, ¶ 17, 152 P.3d 861 (footnotes omitted).

The affidavit requirement altered procedural requirements for only a small subset of similarly-situated negligence plaintiffs. By doing so it violated one of the important underlying goals of Okla. Const. art. 5, § 46: guaranteeing uniformity of procedure in the operating of Oklahoma's legal institutions. This Court explained:

> **By mandating uniformity of procedure, the terms of art. 5, § 46 command that all citizens of the state shall have equal access to legal institutions for application of the general ordinary forensic process.** Medical malpractice plaintiffs constitute nothing more than a subset of parties pursuing a cause under negligence standards. Because 63 O.S. Supp. 2003 § 1–1708.1E impacts less than an entire class of similarly situated claimants—medical malpractice claimants are severed from all tort victims with the possibility of the creation of a third class if the doctrine of

*res ipsa loquitor* applies, the statute is underinclusive and special. We determine that the statute violates the absolute and unequivocal prohibition of the Oklahoma Constitution art. 5, § 46 against the passing of special laws regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts.

*Zeier,* 2006 OK 98, ¶ 18, 152 P.3d 861 (emphasis added) (footnotes omitted).

¶ 22 This Court examined a later incarnation of the affidavit requirement in *Wall v. Marouk,* 2013 OK 36, 302 P.3d 775. As in *Zeier,* this Court determined the affidavit requirement created two classes out of negligence litigants: those who file a cause of action for negligence generally and those who file a cause of action for professional negligence. *Wall,* 2013 OK 36, ¶ 4, 302 P.3d 775. This Court held:

> Title 12 O.S. 2011 § 19 creates a new subclass of tort victims and tortfeasors known as professional tort victims and tortfeasors. In doing so, it places an out of the ordinary enhanced burden on these subgroups to access the courts by requiring victims of professional misconduct to obtain expert review in the form of an affidavit of merit prior to proceeding, and it requires the victims of professional misconduct to pay the cost of expert review. It does establish an impermissible special law regulating the practice of judicial proceedings before the courts.

*Wall,* 2013 OK 36, ¶ 6, 302 P.3d 775.

¶ 23 These prior decisions, however, are distinguishable from this cause. The laws in the cases discussed above shared a common characteristic that resulted in their constitutional infirmity: they carved out a subset of litigants from a general class that was then subjected to differential treatment. In *Montgomery,* the subclass was uninsured motorists. In *Zeier* and *Wall* it was those pursuing medical negligence claims. In contrast, 12 O.S. 2011 § 3009.1 does not operate on a such a subclass.

■ ¶ 24 Title 12 O.S. 2011 § 3009.1 applies uniformly to all personal injury claimants. Contrary to Lee's assertions, it does not specifically target a particular subclass,

such as litigants with insurance coverage, in order to limit their recovery. Instead, the statute as a whole operates to ensure all members of the class are permitted only to admit into evidence the amounts actually paid or owed for medical services. The effect of 12 O.S. 2011 § 3009.1 is to ensure uniformity of outcome within the class regardless of circumstances by preventing a party from admitting into evidence amounts they did not have to pay and thus obtaining a potentially greater amount in damages for medical services than the amount actually paid or owed. Title 12 O.S. 2011 § 3009.1 takes into account various circumstances that might differentiate members of the general class. It does this not to create preference and establish inequality, *See Wall*, 2013 OK 36, ¶ 5, 302 P.3d 775, but specifically to prevent it.

¶ 25 Lee also argues 12 O.S. 2011 § 3009.1 is arbitrary and capricious.[3] However, Lee does not argue that limitations on the admissibility of evidence affecting the general class of all personal injury plaintiffs are somehow arbitrary or capricious. Rather, his assertion that 12 O.S. 2011 § 3009.1 is arbitrary and capricious rests on the same argument we reject above: that 12 O.S. 2011 § 3009.1 creates impermissible subclasses based on criteria such as insurance coverage that are then subjected to unfair treatment. Title 12 O.S. 2011 § 3009.1 ensures a uniform effect on personal injury plaintiffs, regardless of underlying circumstances: it limits a party's ability to admit evidence of medical damages to amounts actually paid or owed, rather than billed.

¶ 26 Title 12 O.S. 2011 § 3009.1 is neither arbitrary nor unreasonable, and does not target for different treatment less than an entire class of similarly situated persons or things. It is not an unconstitutional special law pursuant to Okla. Const. art. 5, § 46. *See Montgomery*, 2014 OK 118, ¶ 7, 341 P.3d 660; *Wall*, 2013 OK 36, ¶ 5, 302 P.3d 775; *Zeier*, 2006 OK 98, ¶ 13, 152 P.3d 861; *Reynolds*, 1988 OK 88, ¶ 17, 760 P.2d 816.

## II.

### TITLE 12 O.S. 2011 § 3009.1 DOES NOT VIOLATE THE RIGHT OF PERSONAL INJURY PLAINTIFFS TO ACCESS THE COURTS, GUARANTEED BY OKLA. CONST. ART. 2, § 6, OR THEIR RIGHT TO TRIAL BY JURY, GUARANTEED BY OKLA. CONST. ART. 2, § 19.

¶ 27 Lee makes broad assertions that 12 O.S. 2011 3009.1 violates the right of personal injury plaintiffs to access the courts, guaranteed by Okla. Const. art. 2, § 6[4], and their right to trial by jury, guaranteed by Okla. Const. art. 2, § 19.[5] Lee quotes *Zeier*, where

---

3. This Court has previously noted that one of the inquiries regarding whether a law is a general law, as opposed to a local or special law, "concerns whether there is a proper and legitimate classification, whether the classification is arbitrary or capricious, or whether it bears a reasonable relationship to the object to be accomplished." *City of Enid v. Public Employees Relations Bd.*, 2006 OK 16, ¶ 13, 133 P.3d 281; *Sanchez v. Melvin*, 1966 OK 116, ¶ 14, 418 P.2d 639. *See Wall*, 2013 OK 36, ¶ 5, 302 P.3d 775 ("A law is special if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.").

4. Okla. Const. art. 2, § 6 provides:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

5. Okla. Const. art. 2, § 19 provides:

The right of trial by jury shall be and remain inviolate, except in civil cases wherein the amount in controversy does not exceed One Thousand Five Hundred Dollars ($1,500.00), or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Thousand Five Hundred Dollars ($1,500.00). Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts. Juries for the trial of civil cases, involving more than Ten Thousand Dollars ($10,000.00), and felony criminal cases shall consist of twelve (12) persons. All other juries shall consist of six (6) persons. However, in all cases the parties may agree on a lesser number of jurors than provided herein.
In all criminal cases where imprisonment for more than six (6) months is authorized the entire number of jurors must concur to render a verdict. In all other cases three-fourths (¾) of the whole number of jurors concurring shall have power to render a verdict. When a verdict is rendered by less than the whole number of jurors, the verdict shall be signed by each juror concurring therein.

this Court stated that "legislation cannot be used to deny the constitutional guarantee of court access" and also that "[a]ccess to courts must be available to all through simple and direct means and the right must be administered in favor of justice rather than being bound by technicalities." 2006 OK 98, ¶¶ 25–26, 152 P.3d 861.

¶ 28 Lee's argument amounts to a claim that any statutory provision that might affect a limitation on a jury's ability to award damages somehow violates Okla. Const. art. 2, §§ 6 & 19. However, he points to no prior decision of this Court, or other authority, in support of this argument. His reliance on *Zeier* concerning Okla. Const. art. 2, § 6 is misplaced, as it concerned a specific affidavit only a subset of negligence plaintiffs were required to obtain before they could proceed with their claim, thereby placing a costly and discriminatory bar against accessing the courts applicable only to one subclass of plaintiff. *See Zeier*, 2006 OK 98, ¶¶ 26–28, 152 P.3d 861.

¶ 29 Further, this Court has consistently ruled that Okla. Const. art. 2 § 6 operates as a mandate to the judiciary rather than a limitation on the Legislature. *Lafalier v. Lead–Impacted Communities Relocation Assistance Trust*, 2010 OK 48, ¶ 18, 237 P.3d 181; *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 18, 12 P.3d 452; *Rollings v. Thermodyne Industries, Inc.*, 1996 OK 6, ¶ 9, 910 P.2d 1030. "In other words, Section 6 was intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief." *Rollings*, 1996 OK 6, ¶ 9, 910 P.2d 1030.

▆ ¶ 30 Okla. Const. art. 2, § 6 has most often been used to insure, regardless of status, that equal access to court is permitted. *Rollings*, 1996 OK 6, ¶ 10, 910 P.2d 1030. *See Zeier*, 2006 OK 98, ¶ 25, 152 P.3d 861 ("The clear language of art. 2, § 6 requires that the courts must be open to all on the same terms without prejudice."). Title 12 O.S. 2011 § 3009.1 in no way inhibits access to the courts. It does not arbitrarily prevent any claimant from filing a personal injury action and subjects all personal injury claimants to similar evidentiary restrictions that place no meaningful barrier before their

quest for a remedy. Unlike in *Zeier*, no subclass of litigants are being entirely denied the ability to pursue their claim in the courts due to a costly procedural requirement. Lee has not met his burden of showing 12 O.S. 2011 § 3009.1 violates Okla. Const. art. 2, § 6.

▆ ¶ 31 Similarly, Lee cites to no authority that actually supports his argument that statutory limitations on the admissibility of evidence amount to a denial of a litigant's right to a trial by jury guaranteed by Okla. Const. art. 2, § 19. Instead, Lee is misconstruing precedent holding that recovery of damages is a question for the jury. Lee cites *Estrada v. Port City Properties, Inc.*, where this Court held:

> The recovery of damages is a jury question. Broad discretion is given to the jury to determine the amount of damages. Where the amount of the verdict is within the limits of the evidence, we will not invade the jury's province and substitute our judgment as a fact-finding tribunal. Jury awards will not be reduced unless it appears that the damage award was not supported by the evidence and was so excessive as to appear to have been given under the influence of passion or prejudice.

2011 OK 30, ¶ 35, 258 P.3d 495.

Lee interprets *Estrada* to mean a jury always has absolute and final control over the amount of damages, which is simply not the case. For example, in *Gilbert v. Security Finance Corp. of Okla., Inc.*, 2006 OK 58, ¶ 46, 152 P.3d 165, this Court discussed Oklahoma's punitive damages statute, 23 O.S. Supp. 2002 § 9.1. We explained:

> Title 23, section 9.1 provides far more restraints on jury discretion than required by the Due Process Clause of the Fourteenth Amendment. Oklahoma appellate courts review punitive damages awards to determine whether an award is reasonably related to the defendant's conduct and related to the cause and extent of the injuries. This Court has not hesitated to reverse a punitive award when it is "excessive as a result of the 'passion, prejudice, or improper sympathy' of the jury." Our review of a punitive damages award for excessiveness certainly meets the re-

view required under the Due Process Clause.

*Gilbert*, 2006 OK 58, ¶ 46, 152 P.3d 165 (footnotes omitted).

¶ 32 The recognition that the jury is the trier of fact and its determinations on the amount of damages are subject to a certain amount of deference by a reviewing court on appeal should not be taken to imply that the Legislature lacks authority under Okla. Const. art. 2, § 19 to place limits on the types of evidence admissible in civil proceedings. Indeed, that is the very purpose of Oklahoma Evidence Code, 12 O.S. § 2101 *et seq.*

## III.

### 12 O.S. 2011 § 3009.1 DOES NOT VIOLATE THE DUE PROCESS GUARANTEES OF OKLA. CONST. ART. 2, § 7.

 ¶ 33 The Oklahoma Constitution guarantees the right to due process. The relevant provision is Okla. Const. art. 2, § 7, which provides: "[n]o person shall be deprived of life, liberty, or property, without due process of law."[6] Lee asserts that 12 O.S. 2011 § 3009.1 violates the due process protections of the Oklahoma Constitution by: 1) limiting the rights of certain plaintiffs to submit evidence; 2) depriving certain categories of plaintiffs of property interests without hearing or notice because it limits their right to submit evidence; and 3) provides for unequal treatment under the law.

### A. Title 12 O.S. 2011 § 3009.1 does not violate Okla. Const. art. 2., § 7 by placing limitations on the admissibility of evidence.

 ¶ 34 Lee argues that 12 O.S. 2011 § 3009.1 violates the Okla. Const. art. 2, § 7 by limiting the evidence that insured plaintiffs, specifically, are allowed to present. As discussed previously, this is an incorrect characterization of 12 O.S. 2011 § 3009.1, which limits all personal injury plaintiffs to submitting evidence of medical expenses they

have paid or will be liable for. This argument is functionally the same as that raised in his special law claim, discussed previously.

¶ 35 Regardless, Lee relies on a single prior decision of this Court as his only authority for the proposition that a statutory limitation on the admissibility of evidence violates Okla. Const. art. 2, § 7. Specifically, Lee quotes *Jackson v. Indep. Sch. Dist. No. 16 of Payne Cnty.*, 1982 OK 74, ¶ 10, 648 P.2d 26, where this Court described the procedural guarantees of due process:

> Procedural due process of law contemplates a fair and open hearing before a legally constituted court or other authority with notice and an opportunity to present evidence and argument, representation by counsel, if desired, and information concerning the claims of the opposing party with reasonable opportunity to controvert them.

While due process certainly includes the opportunity to present evidence as an important component of the right to be heard, *Jackson* does not stand for the proposition that any statutory rule of evidence determining what is and is not admissible somehow violates due process.

### B. Lee's assertion that 12 O.S. 2011 § 3009.1 deprives him, and others similarly situated, of a vested property interest with no notice or hearing in violation of Okla. Const. art. 2., § 7 is unsupported by argument or authority.

¶ 36 Lee also asserts 12 O.S. 2011 § 3009.1 offends due process by depriving certain categories of plaintiffs of their property interests without hearing or notice. Specifically, Lee asserts:

> An individual with insurance pays premiums to ensure coverage in the event of an accident causing the need for medical and other expenses. Under § 3009.1, an insured plaintiff is only entitled to "the actual amount paid" for any medical treatment

6. Oklahoma's Due Process Clause is coextensive with its federal counterpart, though there may be situations in which the Oklahoma provision affords greater protections. *State ex rel. Bd. of Regents of University of Okla. v. Lucas*, 2013 OK

14, n. 25, 297 P.3d 378; *Okla. Corrections Prof'l Ass'n, Inc. v. Jackson*, 2012 OK 53, n. 13, 280 P.3d 959; *State ex rel. Okla. Bar Ass'n v. Mothershed*, 2011 OK 84, n. 65, 264 P.3d 1197.

instead of the amounts billed if the medical provider signs a statement "that the provider will accept the amount paid as full payment of the obligations." 12 O.S. 3009.1(a). Thus, the amount of medical bills is often significantly reduced under the statute. Yet this reduction in costs does not then go to the injured party, who has paid premiums monthly to ensure these bills would be paid. Instead, the benefit of these premiums, the difference between the incurred and the actual billed amount, goes directly to the alleged guilty party.

Brief in Chief of Petitioner Jhonhenri Jabrille Lee, p. 20.

Essentially, Lee asserts that he and others similarly situated have a vested and constitutionally-protected property interest in the difference between the amounts insurers are initially billed vs. the amounts the insurers paid on their behalf because of premiums paid for insurance coverage.

■■■■ ¶ 37 Lee did not raise this argument before the trial court.[7] Further, aside from authority noting constitutional protection of vested property interests, Lee provides no citation to any authority supporting his claim that he possesses a vested property interest deprived by 12 O.S. 2011 § 3009.1. Neither counsel nor *pro se* litigants have a right to place upon this court the researching burden and consume its time in a search for authorities that would support their argument. *Fent v. Contingency Review Bd.*, 2007 OK 27, ¶ 23 n. 59, 163 P.3d 512. Claims to error for which there is no support in argument and authority are deemed abandoned. *Fent*, 2007 OK 27, n. 58, 163 P.3d 512; *Graham v. Keuchel*, 1993 OK 6, n. 3, 847 P.2d 342; *Holbert v. Echeverria*, 1987 OK 99, n. 4, 744 P.2d 960 (superseded by statute on other grounds).

C. **Title 12 O.S. 2011 § 3009.1 does not subject litigants to unequal treatment under the law in violation of the due process guarantees of Okla. Const. art. 2, § 7.**

■■■■ ¶ 38 Lee also asserts that 12 O.S. 2011 § 3009.1 offends due process by failing to provide equal treatment under the law. Lee cites this Court's opinion in *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, as his only authority for this proposition. In that cause, this Court noted Okla. Const. art. 2, § 7 contains an anti-discrimination component that affords protection against unreasonable or unreasoned classifications serving no important governmental objective. *Zeier*, 2006 OK 98, n. 8, 152 P.3d 861. As Lee admits in his brief in chief, this is merely another facet of his special law argument that insured plaintiffs are somehow treated differently under 12 O.S. 2011 § 3009.1 in a manner that is arbitrary and unreasonable. As discussed in Section I of this Opinion, supra, such is simply not the case.

## IV.

**12 O.S. 2011 § 3009.1 DOES NOT VIOLATE THE SEPARATION OF POWERS PROVISION OF OKLA. CONST. ART. 4, § 1.**

¶ 39 Lee argues that because 12 O.S. 2011 § 3009.1 promulgates a rule of evidence and dictates what is and is not admissible evidence relating to the value of medical expenses, it invades the fact-finding function of the judiciary and is therefore unconstitutional as a violation of Okla. Const. art. 4, § 1. Lee's argument in this regard is without merit.

■■■■ ¶ 40 Okla. Const. art. 4, § 1 defines the distinct departments of government in the State of Oklahoma, and provides:

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

Okla. Const. art. 4, § 1 divides the powers of state government into three separate departments—Legislative, Executive, and Judicial—and prohibits the departments from ex-

---

7. Matters not first presented to the trial court for resolution are generally not considered on appeal. *Stonecipher v. Dist. Ct. of Pittsburg County*, 1998 OK 122, ¶ 11, 970 P.2d 182; *Steiger v. City National Bank of Tulsa*, 1967 OK 41, ¶ 24, 424 P.2d 69.

ercising powers belonging to the others. *Conaghan v. Riverfield Country Day School*, 2007 OK 60, ¶ 20, 163 P.3d 557. In *Yocum v. Greenbriar Nursing Home*, this Court explained further:

> The separation-of-powers doctrine interdicts legislative intrusion upon the functions assigned to the judiciary by the constitution. Legislative power is mainly confined to making law, while the judiciary is invested primarily with an adjudicative function—the authority to hear and determine forensic disputes. A legislative removal of the discretionary component in adjudicative process is a usurpation of the courts' freedom that is essential to the judiciary's independence from the other two branches.

2005 OK 27, ¶ 13, 130 P.3d 213 (footnotes omitted).

In sum, the power to adjudicate is the power to determine questions of fact or law framed by a controversy and this power is exclusively a judicial power. *Conaghan*, 2007 OK 60, ¶ 20, 163 P.3d 557; *Yocum*, 2005 OK 27, ¶ 13, 130 P.3d 213.

■ ¶ 41 This Court has invalidated legislation for encroaching upon the adjudicative authority of the judiciary when it predetermines an adjudicative fact. *See Conaghan*, 2007 OK 60, ¶ 22, 163 P.3d 557. However, the judiciary's constitutional prerogatives concerning fact-finding and adjudication should not be confused with the legislative prerogative to determine the rules of evidence, which this Court has directly recognized: "[a]s to legislative authority to declare rules of evidence, and that same are subject to modification or change is unquestioned, no person having a vested right in a rule of evidence." *Polk v. Oklahoma Alcoholic Beverage Control Bd.*, 1966 OK 224, ¶ 18, 420 P.2d 520. Accordingly, 12 O.S. 2011 § 3009.1 is not unconstitutional as a violation of Okla. Const., art. 4, § 1.

## V.

## TO THE LIMITED EXTENT 12 O.S. 2011 § 3009.1 MODIFIES THE COLLATERAL SOURCE RULE, IT CONTROLS OVER THE COMMON LAW.

■ ¶ 42 Lee asserts 12 O.S. 2011 § 3009.1 abolishes the collateral source rule for insured victims and is therefore invalid. Oklahoma adopted the collateral source rule through the operation of 23 O.S. 2011 § 61, which provides:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

As this Court explained in *Denco Bus Lines v. Hargis*, 1951 OK 11, ¶ 26, 204 Okla. 339, 229 P.2d 560:

> Under our statute upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused. Under the statute the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer would not operate to lessen the damages recoverable from the person causing the injury.

Pursuant to the collateral source rule, compensation given to the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person who causes the injury. *Mariani v. State ex rel. Okla. State University*, 2015 OK 13, ¶ 8, 348 P.3d 194; *Blythe v. University of Okla.*, 2003 OK 115, ¶ 7, 82 P.3d 1021; *Denco*, 1951 OK 11, ¶ 26, 204 Okla. 339, 229 P.2d 560.

¶ 43 Under the collateral source rule, the fact that some of Lee's medical care might be paid for by his insurer does not entitle Bueno to a reduction in potential damages by that amount. To this extent, 12 O.S. 2011 § 3009.1 is in accord with the common law collateral source rule because it does not prevent admission into evidence of the amount actually paid or owed for medical care, regardless of whether the amount was paid by the injured party or by some other entity on the party's behalf, such as an insurer.

¶ 44 However, Lee argues the collateral source rule protects more than damages in the amount an injured party actually pays or owes for medical treatment. He argues the rule should in fact be extended to protect an injured party's ability to recover the full

amount the injured party is billed for treatment, regardless of whether that amount is later reduced through negotiation, Medicaid write offs, or a contract between the provider and an insurer. Simply put, Lee argues: 1) the collateral source rule should protect an injured party's ability to collect from a defendant amounts they were billed, yet never had to actually pay due to some later reduction; and 2) 12 O.S. 2011 § 3009.1 interferes with the collateral source rule by preventing an injured party from doing so.

¶ 45 Whether the ability to recover in damages the difference existing between the amount billed and the amount actually paid or owed due to, for example, Medicaid write-offs, is covered by the common law collateral source rule is debatable. It appears to be a question this Court has hitherto left unanswered. Decisions in other jurisdictions, however, are instructive.

¶ 46 Some courts have refused to apply the collateral source rule to an amount billed, but not paid or owed, because it does not fit within the definition of damages. For example, in *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal.4th 541, 548, 129 Cal. Rptr.3d 325, 257 P.3d 1130 (Cal. 2011), the Supreme Court of California determined the collateral source rule did not protect an injured plaintiff's ability to recover an amount billed by a provider, but for which the plaintiff never incurred liability. The court determined:

> The [collateral source] rule, however, has no bearing on amounts that were included in a provider's bill but for which the plaintiff never incurred liability because the provider, by prior agreement, accepted a lesser amount as full payment. Such sums are not damages the plaintiff would otherwise have collected from the defendant. They are neither paid to the providers on the plaintiff's behalf nor paid to the plaintiff in indemnity of his or her expenses. Because they do not represent an economic loss for the plaintiff, they are not recoverable in the first instance. The collateral source rule precludes certain deductions against otherwise recoverable damages, but does not expand the scope of economic damages to include expenses the plaintiff never incurred.

*Howell*, 129 Cal.Rptr.3d 325, 257 P.3d at 1133.

Similarly, in *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 765 A.2d 786 (2001) (abrogated on other grounds by *Northbrook Life Ins. Co. v. Com.*, 597 Pa. 18, 949 A.2d 333 (2008)), the Supreme Court of Pennsylvania refused to extend the collateral source rule to amounts a plaintiff was billed but did not pay. The court explained:

> Clearly, Appellant is entitled to recover $12,167.40, the amount which was paid on her behalf by Medicare and Blue Cross, the collateral sources. *See* Restatement (Second) of Torts § 920A(2), *supra*, note 2. But the essential point to recognize is that Appellee is not seeking to diminish Appellant's recovery by this amount. Rather, the issue is whether Appellant is entitled to collect the additional amount of $96,500.91 as an expense. Appellant did not pay $96,500.91, nor did Medicare or Blue Cross pay that amount on her behalf. The collateral source rule does not apply to the illusory "charge" of $96,500.91 since that amount was not paid by any collateral source.

*Moorhead*, 765 A.2d at 791.

¶ 47 Other jurisdictions have extended the collateral source rule to protect an injured party's ability to recover amounts billed but not paid. For example, in *Rose v. Christi Health System, Inc.*, 276 Kan. 539, 78 P.3d 798 (2003), the Supreme Court of Kansas determined that for reasons of public policy, the collateral source rule extends to protect an injured party's ability to recover the amount hospital bills written off due to contract with Medicare. The Court determined:

> Public policy in Kansas supports the theory that any windfall from the injured party's collateral sources should benefit the injured party rather than the tortfeasor, who should bear the full liability of his or her tortious actions without regard to the injured parties' method of financing his or her medical treatment. Applying these concepts to this case, we hold that the trial court did not err when it applied the collateral source rule to the portion of the hospital's medical bills that was written off

pursuant to Via Christi's contract with Medicare and affirm on this issue.

*Rose,* 78 P.3d at 806.

¶ 48 However, Lee's focus on whether the collateral source rule extends to cover amounts billed to an injured plaintiff but not paid or owed is misplaced. The Legislature has effectively answered that question through the enactment of 12 O.S. 2011 § 3009.1. By doing so, the Legislature has exercised its policymaking role and determined that injured parties in a personal injury action will not be able to admit evidence of, and therefore recover damages for, amounts they or their insurer were billed for treatment but are not required to pay. In that regard, as to this limited issue, 12 O.S. 2011 § 3009.1 abrogates the collateral source rule to the extent it would otherwise conflict with the statute.

¶ 49 The collateral source rule cannot now protect Lee's right to recover the amount he or his provider was billed but not required to pay because compliance with 12 O.S. 2011 § 3009.1 specifically prevents him from admitting the amount billed but not paid, into evidence. The fact that 12 O.S. 2011 § 3009.1 might interfere with the collateral source rule does not invalidate it. Validly expressed legislative intent must always control over contrary notions of unwritten law. *Heldermon v. Wright,* 2006 OK 86, n. 15, 152 P.3d 855; *Brown v. Ford,* 1995 OK 101, ¶ 10, 905 P.2d 223 (overruled on other grounds by *Smith v. Pioneer Masonry, Inc.,* 2009 OK 82, 226 P.3d 687).

¶ 50 This Court has already recognized that compliance with 12 O.S. 2011 § 3009.1 now controls over the collateral source rule in situations where conflict might arise between the two. In *Gowens v. Barstow,* 2015 OK 85, 364 P.3d 644, this Court declined to answer whether Medicaid write-offs might be covered by the collateral source rule and noted the controlling effect of 12 O.S. 2011 § 3009.1. The Court explained:

The parties do not cite any decisions of this Court concerning whether or not Medicaid write-offs are considered a collateral source. Ms. Gowens' attorneys point out that some other jurisdictions treat Medicaid write-offs as a collateral source. It was further pointed out that after this case was commenced, changes to Oklahoma law (12

O.S. 2011, § 3009.1) allow only actual amounts paid for any doctor bills to be admissible at trial. However, we need not decide today whether Medicaid write-offs made in cases filed prior to 12 O.S. 2011, § 3009.1 are a collateral source.

*Gowens,* 2015 OK 85, ¶ 34, 364 P.3d 644 (footnotes omitted). The Court in *Gowens* tacitly acknowledged that regardless of the original effect of the collateral source rule on billed vs. paid amounts, 12 O.S. 2011 § 3009.1 now controls.

¶ 51 However, we must stress that 12 O.S. 2011 § 3009.1 has no effect on the collateral source rule except that required by the operation of the statute. This Court has long recognized the power of the Legislature to modify or abrogate the common law by statute. *See Fuller v. Odom,* 1987 OK 64, ¶¶ 3–4, 741 P.2d 449 (recognizing legislative abrogation of common law theories of recovery against governmental tortfeasors under the Political Subdivision Tort Claims Act). Generally, abrogation of the common law must be clearly and plainly expressed by the legislature. *Tucker v. ADG, Inc.,* 2004 OK 71, ¶ 19, 102 P.3d 660; *Greenberg v. Wolfberg,* 1994 OK 147, ¶ 11, 890 P.2d 895; *Fuller,* 1987 OK 64, ¶ 4, 741 P.2d 449. This Court has previously stated that mere implication is not enough to override the presumption that the common law remains in full force and effect. *Watson v. Gibson Capital,* 2008 OK 56, ¶ 12, 187 P.3d 735; *Taylor v. State Farm Fire and Cas. Co.,* 1999 OK 44, ¶ 21, 981 P.2d 1253; *Greenberg,* 1994 OK 147, ¶ 11, 890 P.2d 895. There is no express legislative intent in 12 O.S. 2011 § 3009.1 to abolish the collateral source rule in its entirety, for insured victims of torts or otherwise. Rather, 12 O.S. 2011 § 3009.1 explicitly restricts the admissibility of certain types of evidence. There is no ambiguity in the language and expressed intention of 12 O.S. 2011 § 3009.1, and to the extent it conflicts with operation of the collateral source rule, it controls.

## CONCLUSION

¶ 52 A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. *Rural Water Sewer and Solid Waste Management v. City of Guthrie,* 2010 OK 51, ¶ 15, 253 P.3d 38; *Kimery v.*

*Public Service Co. of Oklahoma*, 1980 OK 187, ¶ 6, 622 P.2d 1066; *Matter of Daniel, Deborah and Leslie H.*, 1979 OK 33, ¶ 10, 591 P.2d 1175. The trial court correctly determined Lee failed to demonstrate the unconstitutionality of 12 O.S. 2011 3009.1 on any of the grounds he asserted. Lee has failed to meet the heavy burden cast on those challenging a legislative enactment to show. its unconstitutionality. *Douglas v. Cox Retirement Properties, Inc.*, 2013 OK 37, ¶ 3, 302 P.3d 789; *Thomas v. Henry*, 2011 OK 53, ¶ 8, 260 P.3d 1251. Accordingly, the decision of the trial court is affirmed.

**PETITION FOR CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER PREVIOUSLY GRANTED; ORDER OF THE TRIAL COURT AFFIRMED**

CONCUR: REIF, C.J., COMBS, V.C.J., WINCHESTER, EDMONDSON, and TAYLOR, JJ.

CONCUR SPECIALLY: KAUGER, J. (by separate writing)

CONCUR IN PART; DISSENT IN PART: GURICH, J.

DISSENT: WATT and COLBERT, JJ.

KAUGER, J., concurring specially:

¶ 1 I agree with the majority that Petitioner has failed to demonstrate the unconstitutionality of 12 O.S. 2011 § 3009.1, and write separately to highlight the policy reasoning behind by the statute. Title 12 O.S. 2011 § 3009.1 limits the admissibility of evidence regarding medical costs to that which has been paid or is owed, rather than that which has been billed.[1]

¶ 2 The statute is necessary because of the opaque process of medical services pricing, in which there ·is often a significant difference between the price that is billed and the price that is paid.[2] The amount billed for a medical service is not the amount a provider expects to collect. Instead, it is a starting position for negotiations with private insurers, Medicare, Medicaid, and other groups.[3] If a physician or hospital initially bills at an inflated rate, they are more likely to ultimately receive a higher amount. There are thus structural incentives for a service provider to bill at an exaggerated rate, and this occurs nationwide. In 2004, hospitals in the United States received only thirty-eight percent of the initially listed price.[4] The pricing in the present case is similar. The initial bill was for

1. Title 12 O.S. 2011 § 3009.1 provides:
 A. Upon the trial of any civil case involving personal injury, the actual amounts paid for any doctor bills, hospital bills, ambulance service bills, drug bills and ·similar bills for expenses incurred in the treatment of the party shall be the amounts admissible at trial, not the amounts billed for expenses incurred in the treatment of the party. If, in addition to evidence of payment, a signed statement acknowledged by the medical provider or an authorized representative that the provider in consideration of the patient's efforts to collect the funds to pay the provider, will accept the amount paid as full payment of the obligations is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the amount paid, then bills in excess of the amount paid but not more than the amount of the lien shall be admissible. If no payment has been made, the Medicare reimbursement rates in effect when the personal injury occurred shall be admissible if, in addition to evidence of nonpayment, a signed statement acknowledged by the medical provider or an authorized representative that the provider, in consideration of the patient's efforts to collect the funds to pay the provider, will accept payment at the Medicare reimbursement rate less cost of recovery as provided in Medicare regulations as full payment of the obligation is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the Medicare rate, then bills in excess of the amount of the Medicare rate but not more than the amount of the lien shall be admissible.
 B. This section shall apply to civil cases involving personal injury filed on or after November 1, 2011.

2. George A. Nation III, Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients, 65 Baylor L. Rev. 425, 432 (2013).

3. Keith T. Peters, What Have We Here? The Need for Transparent Pricing and Quality Information in Health Care: Creation of an Sec for Health Care, 10 J. Health Care L. & Pol'y 363, 366 (2007).

4. Peters, supra note 3 (citing Uwe E. Reinhardt, The Pricing of U.S. Hospital Services: Chaos Behind a Veil of Secrecy, 25 Health Aff. 57, 57 (2006)).

$8,112.81, while only $2,845.11 was actually paid.

¶3 This process is inefficient and leads to uncertainty. In hospitals, a patient will often sign a "Statement of Financial Responsibility" instead of agreeing to a specific and set price.[5] A patient is consequently purchasing a service without knowing how much that service will cost. Then, they will be billed at a specific and set price that will later be discounted as a result of negotiations between the provider and insurer. Throughout this process, the patient remains unsure what is actually owed. The solution seems clear: medical service providers should stop inflating prices on the initial bill. Like every other commercial transaction, the amount that is billed and the amount that is owed should be the same.

¶4 However, those are not the present circumstances. Title 12 O.S. 2011 § 3009.1 [6] is a reaction to the way that medical services are priced. It ensures that a plaintiff does not receive a windfall, but also ensure that the measure of damages "is the amount which will compensate for all detriment."[7]

---

5. Nation, supra note 2 at 426.

6. See note 1, supra.

7. Title 23 O.S. 2011 § 61 provides that:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.